IN THE SUPREME COURT OF THE STATE OF IDAHO
DOCKET NO. 46497

| | ) | |
|---|---|---|
| **AZAD HAJI ABDULLAH,** | ) | |
| | ) | |
| Petitioner-Appellant, | ) | **Boise, February 2021 Term** |
| | ) | |
| v. | ) | **Opinion Filed: April 8, 2021** |
| | ) | |
| **STATE OF IDAHO,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Cheri C. Copsey, District Judge.

The district court's order is <u>affirmed</u>.

Kormanik & Sneed, LLP, Boise, for appellant. John R. Kormanik argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. L. LaMont Anderson argued.

_____

BRODY, Justice.

This appeal concerns a successive petition for post-conviction relief in a capital case that was summarily dismissed by the district court. In 2004, a jury found Azad Haji Abdullah guilty of first-degree murder, first-degree arson, three counts of attempted first-degree murder, and felony injury to a child. He was sentenced to death for the murder. Abdullah filed a petition for post-conviction relief, which was dismissed by the district court in 2011. Abdullah then filed a consolidated appeal that included a direct appeal from his convictions and sentences and an appeal from the district court's dismissal of his petition for post-conviction relief. This Court, in *State v. Abdullah*, 158 Idaho 386, 348 P.3d 1 (2015), affirmed the convictions, sentences, and denial of post-conviction relief.

In 2013—after the district court issued its order dismissing the petition for post-conviction relief, but prior to this Court's issuance of *Abdullah* in 2015—Abdullah filed a successive petition for post-conviction relief ("Successive Petition"). The Successive Petition

1

was subsequently amended in 2016 and 2017. Abdullah also filed a pro se supplement to the Successive Petition ("Supplement") in 2017 that was incorporated with the Successive Petition. The Successive Petition and Supplement include substantive claims, claims of ineffective assistance of trial counsel, and claims of ineffective assistance of appellate counsel. The district court determined that Abdullah was not entitled to post-conviction relief and summarily dismissed his Successive Petition and Supplement. We affirm the district court's dismissal.

# I. PROCEDURAL AND FACTUAL BACKGROUND

## A. Procedural Background.

The procedural background associated with this case is extensive, dating back to 2002 when Abdullah was first indicted. *State v. Abdullah*, 158 Idaho 386, 405, 348 P.3d 1, 20 (2015). The procedural history that is relevant to this appeal, however, can be summarized in a few paragraphs.

In 2004, a jury found Abdullah guilty of murdering his wife, Angela "Angie" Abdullah. *Id.* at 158 Idaho at 412, 348 P.3d at 27. The jury also found Abdullah guilty of first-degree arson, three counts of attempted first-degree murder, and felony injury to a child. *Id.* In March 2005, "[t]he district court sentenced Abdullah to death for first-degree murder, to twenty-five years imprisonment for arson, to fifteen years imprisonment for each count of attempted first-degree murder, and to ten years imprisonment for felony injury to a child, a total of eighty years imprisonment." *Id.* at 413, 348 P.3d at 28. Abdullah promptly filed a notice of appeal. *Id.* Abdullah also filed a petition for post-conviction relief. *Id.* The district court appointed the State Appellate Public Defender ("SAPD") to represent Abdullah on his direct appeal and on his petition for post-conviction relief. *Id.*

In August 2008, Abdullah filed a final, amended petition for post-conviction relief. *Id.* at 414, 348 P.3d at 29. The district court held an evidentiary hearing in 2010 and a final hearing in 2011. *Id.* The district court concluded that Abdullah was not entitled to post-conviction relief and, in October 2011, entered a final judgment dismissing Abdullah's petition. *Id.* Abdullah filed a notice of appeal the following month. *Id.*

This Court ruled on Abdullah's consolidated appeal—which included a direct appeal from his convictions and sentences and an appeal from the district court's dismissal of his petition for post-conviction relief—in 2015. *Id.* at 530, 348 P.3d at 145. This Court affirmed "[t]he judgments of conviction and sentences pronounced by the district court, including the

death penalty . . . ." *Id.* This Court also affirmed the district court's judgment dismissing Abdullah's petition for post-conviction relief. *Id.*

In July 2013—after the district court dismissed Abdullah's first petition for post-conviction relief, but prior to this Court's ruling concerning his consolidated appeal—Abdullah filed his Successive Petition. The district court stayed the proceedings, however, pending the outcome of Abdullah's consolidated appeal. After this Court issued its ruling in *Abdullah*, the district court lifted the stay. Abdullah amended his Successive Petition in 2016 and 2017. With the district court's consent, Abdullah also filed his pro se Supplement in 2017, which was incorporated with the Successive Petition. During the course of the proceedings, the district court took judicial notice of the transcripts from Abdullah's trial, but it did not expressly take judicial notice of the clerk's record and exhibits.

Ultimately, the district court determined that Abdullah was not entitled to post-conviction relief and issued an order summarily dismissing his Successive Petition and Supplement. The court entered a judgment in November 2018, and Abdullah timely appealed to this Court.

### B. Factual Background.

The factual background associated with this case is outlined in detail in *State v. Abdullah*, 158 Idaho 386, 405–14, 348 P.3d 1, 20–29. Concisely stated, "Abdullah murdered his wife [Angie] in their home and then set fire to the home with two of the children (A.H. and M.A.) and a young friend (S.S.) asleep inside and one of their children (N.A.) in the backyard." *Id.* at 405, 348 P.3d at 20. The facts relevant to this appeal largely relate to specific aspects of Abdullah's trial, first post-conviction relief proceedings, and consolidated appeal.

#### 1. Exclusion of Evidence Supporting Abdullah's Contention That His Wife Committed Suicide.

At trial, Abdullah was precluded from introducing certain evidence regarding his wife's life insurance policy, history of suicidal ideation, and post-partum depression. In *Abdullah*, this Court held that the district court did not err when it excluded evidence pertaining to the life insurance policy. *Id.* at 440, 348 P.3d at 55. We specifically held that "[e]ven if the existence of the life insurance policy was relevant, the district court properly exercised its discretion to determine the probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, and waste of time." *Id.*

> The life insurance policies were an extraneous piece of information that had little
> to do with the case. The district court did not err by excluding evidence of

Angie's life insurance policies. Further, any error was harmless because beyond a reasonable doubt any error in the exclusion of Angie's life insurance policy did not contribute to the verdict obtained.

*Id.* This Court did not explicitly consider the district court's rulings concerning evidence about suicidal ideation and post-partum depression when deciding *Abdullah*, but did observe that Abdullah questioned the State's witnesses about suicidal ideation and depression. *See id.* at 436, 348 P.3d at 51.

### 2. Angie's Out-of-Court Statements.

At trial, the district court admitted certain out-of-court statements made by Abdullah's wife. *Id.* at 431, 348 P.3d at 46. The statements were "elicited by the State through the testimony of (1) Angie's obstetrician Dr. Brenda Williams; (2) her nurse practitioner Velma Seabolt; (3) her therapist Gina Wolfe Seybold; and (4) attorney Deborah Kristal." *Id.* Several of the statements were critical of Abdullah. *Id.* at 431–37, 348 P.3d at 46–52.

In *Abdullah*, this Court held that the district court did not err by admitting Angie's out-of-court statements. *Id.* Further, this Court held that even if the out-of-court statements were improperly admitted, it was harmless error:

> According to Abdullah, this evidence was improperly admitted to show Abdullah was "a bad husband" and to prejudice the jury against him. Assuming all of [the] out-of-court statements were inadmissible, any error beyond a reasonable doubt did not contribute to the verdict obtained based on the overwhelming evidence against Abdullah and the district court's instructions to the jury.

*Id.* at 437, 348 P.3d at 52.

### 3. Abdullah's Out-of-Court Statements.

At trial, the district court admitted several out-of-court statements made by Abdullah. *Id.* at 437–39, 348 P.3d at 52–54. Specifically, Abdullah's co-workers testified that Abdullah had told them that it was not illegal to kill your wife in Kurdistan if she was unfaithful. *Id.* at 437–38, 348 P.3d at 52–53. The district court admitted Abdullah's out-of-court statements because they were relevant and went to his state of mind. *Id.* at 437, 348 P.3d at 52.

This Court held that the district court did not err when it admitted the testimony pertaining to Abdullah's out-of-court statements:

> The district court in this case recognized Abdullah's statement was prejudicial, but the probative value was not substantially outweighed by the danger of unfair prejudice. Based on the record, the district court perceived the admission of Abdullah's out-of-court statements as a matter of discretion, acted within the outer boundaries of its discretion and consistently within I.R.E. 403, and reached

4

its decision to admit the statements through an exercise of reason. There was no error.

*Id.* at 439, 438 P.3d at 54.

### 4. PowerPoint Presentation.

During the guilt-phase of Abdullah's trial, the prosecutor utilized a PowerPoint presentation during closing argument. Some of the PowerPoint slides showed Abdullah wearing a kufi cap—a round cap commonly worn by Muslim men. Another PowerPoint slide was titled "Alibi Hoax."

### 5. Conflict of Interest Involving SAPD.

During Abdullah's first post-conviction relief proceedings, the district court issued its Order re: Conflict Counsel. In its order, the district court stated: "The record establishes that the [SAPD] advised trial counsel on several matters, including advising trial counsel to seek a continuance of the trial (which they did) and suggesting specific voir dire approaches. Both of these areas are the subject of Mr. Abdullah's post-conviction claims." Consequently, the district court determined the SAPD had a conflict in its representation of Abdullah in his first post-conviction relief proceedings. The district court appointed attorney R. Keith Roark ("Roark") to independently advise Abdullah about the conflict. The court specified, "[i]n order to ensure that Mr. Abdullah knowingly, intelligently, and voluntarily waives this conflict, the [c]ourt hereby appoints [Roark] to independently advise Mr. Abdullah about the conflict and its potential effect on this post-conviction case, as well as any future proceedings, including federal habeas or successive post-conviction actions." After being advised by Roark, Abdullah initially declined to waive the conflict. Abdullah reversed his decision one week later, however, and agreed to waive the conflict involving the SAPD. The district court stated: "I will find that you waived conflict which means you cannot raise it on post-conviction or on appeal." Abdullah responded by stating, "I understand."

## II. STANDARD OF REVIEW

A successive petition for post-conviction relief in a capital case is governed by special appellate procedures set forth in Idaho law. I.C. § 19-2719 (establishing special appellate procedures to eliminate unnecessary delays in carrying out a valid death sentence). Proceedings concerning post-conviction relief are civil in nature. *Dunlap v. State (Dunlap 2015)*, 159 Idaho 280, 294–95, 360 P.3d 289, 303–04 (2015) (quoting *Dunlap v. State (Dunlap 2013)*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)). The applicant "must prove by a preponderance of the evidence

5

the allegations upon which the request for post-conviction relief is based." *State v. Hairston*, 133 Idaho 496, 510, 988 P.2d 1170, 1184 (1999) (citation omitted).

Summary dismissal of a petition for post-conviction relief is analogous to summary judgment under Idaho Rule of Civil Procedure 56. *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008). When evaluating an order summarily dismissing a petition for post-conviction relief, this Court applies the same standard as the district court. *Dunlap 2015*, 159 Idaho at 295, 360 P.3d at 304 (citing *Charboneau v. State*, 140 Idaho 789, 793, 102 P.3d 1108, 1112 (2004)). "On review of a dismissal of a post-conviction relief application without an evidentiary hearing, the Court must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file." *Payne,* 146 Idaho at 561, 199 P.3d at 136 (citing *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct. App. 1993)). The facts must be reviewed in a light most favorable to the applicant. *Dunlap 2015*, 159 Idaho at 295, 360 P.3d at 304. However, courts are "not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law." *Id.* (quoting *Payne*, 146 Idaho at 561, 199 P.3d at 136). "Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the relief requested." *Payne*, 146 Idaho at 561, 199 P.3d at 136. If it is determined that a genuine issue of material fact exists, an evidentiary hearing is required. *Dunlap 2015*, 159 Idaho at 295, 360 P.3d at 304 (quoting *Dunlap 2013*, 155 Idaho at 361, 313 P.3d at 17).

### III. ANALYSIS

**A. The clerk's record and exhibits from Abdullah's trial are part of the record before this Court.**

We begin our analysis by addressing the State's argument that the district court did not take judicial notice of the clerk's record and exhibits from Abdullah's trial. The State asserts:

> While the parties filed multiple motions to take judicial notice, it does not appear the court ruled on all the motions, but judicially noticed only some of the documents requested. Specifically, while it appears Abdullah requested the court take judicial notice of the entirety of the record from his trial, it does not appear the court judicially noticed the Clerk's Record or exhibits, only the trial transcripts.

(Internal citations omitted). Therefore, the State contends the clerk's record and exhibits from Abdullah's trial are "not part of the record and cannot be considered by this Court." The State

also cites *Esquivel v. State*, 149 Idaho 255, 258, 233 P.3d 186, 189 (Ct. App. 2010), for the proposition that "[m]issing portions of an appellate record are presumed to support the decision of the trial court."

We conclude that the State's argument is flawed. First, the State fails to acknowledge that the district court took judicial notice of the clerk's record and exhibits from Abdullah's trial during Abdullah's first post-conviction relief proceedings. Hence, the record from the first post-conviction relief case includes the trial record and exhibits in question here. Next, while deciding this case, the district court expressly took judicial notice of the *entire* record from Abdullah's first post-conviction relief case. Thus, the entire record from the first post-conviction relief case—which includes the clerk's record and exhibits from Abdullah's trial—is part of the record currently before this Court. Consequently, this Court can consider the clerk's record and exhibits from Abdullah's trial.

**B. The district court did not err when it dismissed Abdullah's substantive claims.**

Abdullah raises a substantive issue for each ineffective assistance of appellate counsel claim in his Successive Petition and Supplement. The district court held that the substantive claims were waived under Idaho Code section 19-2719 because they were time-barred, and because Abdullah knew or should have known about the substantive claims at the time he pursued his first petition for post-conviction relief. The district court also determined that Abdullah did not support his substantive claims with admissible evidence. Therefore, the district court dismissed Abdullah's substantive claims.

Abdullah states that his "ineffective assistance of counsel on appeal claims involve two issues: a substantive issue which counsel failed to raise in the appeal; and the Fourteenth Amendment due process claim under the U.S. Constitution arising from appellate counsel's failure to raise the substantive issue." Abdullah acknowledges, however, that his substantive claims could have been raised earlier as part of his consolidated appeal. He also acknowledges that, by failing to raise the substantive claims in a timely manner, he may have waived the claims. Nevertheless, Abdullah "re-raises all the underlying substantive claims before this [C]ourt for purposes of exhausting them . . . ." Abdullah concedes, however, that he is unlikely to prevail: "[U]nless this Court in its beneficence creates an exception to the statute . . . the lower court's determination of waiver will prevail."

A successive petition for post-conviction relief in a capital case is subject to special

7

appellate procedures set forth in Idaho Code section 19-2719. Any substantive claims challenging a conviction or sentence must be filed within 42 days of the judgment. I.C. § 19-2719(3) ("Within forty-two (42) days of the filing of the judgment imposing the punishment of death, and before the death warrant is filed, the defendant must file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known."). If a defendant fails to comply with this time limitation, "he shall be deemed to have waived such claims for relief as were known, or reasonably should have been known." I.C. § 19-2719(5). Further, under Idaho law, courts have no authority to grant time-barred claims. *Id.* There is an exception to the general rule "for issues that were not known or could not reasonably have been known" within 42 days of the judgment being entered. I.C. § 19-2719(5)(a). Idaho Code section 19-2719 places a "heightened burden" on an applicant, however, to make a prima facie showing that the issues were not known or could not reasonably have been known. *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010) (citing *McKinney v. State*, 133 Idaho 695, 701, 992 P.2d 144, 150 (1999)). The applicant must provide "material facts stated under oath or affirmation by credible persons with first hand knowledge that would support the issue or issues asserted." I.C. § 19-2719(5)(a). Further, the issues, once known, must be raised within a reasonable time. *Pizzuto*, 149 Idaho at 160, 233 P.3d at 91 (citing *McKinney*, 133 Idaho at 701, 992 P.2d at 150).

Here, the district court dismissed Abdullah's substantive claims on two bases. First, the district court determined that Abdullah did not comply with the time limitation set forth in Idaho Code section 19-2719, nor did he qualify for an exception. The district court noted that Abdullah offered "absolutely no evidence that he did not know and could not have timely known about his substantive claims challenging his trial and conviction." Consequently, the district court dismissed Abdullah's substantive claims as time-barred.

Second, the district court concluded that Abdullah did not support the substantive claims in his Successive Petition and Supplement "with admissible and material evidence based on first-hand knowledge stated under oath or affirmation" as required by Idaho Code section 19-2719(5)(a). Thus, the district court also dismissed Abdullah's substantive claims on this alternative basis.

Abdullah's argument that the district court erred when it dismissed his substantive claims fails for three reasons. First, Abdullah concedes that he could have raised the substantive claims earlier in connection with his first petition for post-conviction relief. The district court filed its

8

judgments of conviction and sentences in March 2005. *State v. Abdullah*, 158 Idaho 386, 413, 348 P.3d 1, 28 (2015). Thus, it is evident that the substantive claims delineated in Abdullah's Successive Petition and Supplement were not filed timely as required by Idaho Code 19-2719(3). Further, Abdullah does not qualify for an exception to the 42-day limitation in Idaho Code section 19-2719(5)(a). Abdullah knew or should have known about the substantive claims well before he filed his Successive Petition and Supplement. As such, Abdullah's substantive claims are deemed waived under Idaho law. I.C. § 19-2719(5).

Second, Abdullah failed to challenge the district court's dismissal of his substantive claims based on a lack of admissible evidence. "It is well settled that '[w]here a trial court grants summary judgment on two independent grounds and the appellant challenges only one of those grounds on appeal, the judgment must be affirmed.' " *Brown v. Greenheart*, 157 Idaho 156, 165, 335 P.3d 1, 10 (2014) (quoting *Campbell v. Kvamme,* 155 Idaho 692, 696, 316 P.3d 104, 108 (2013)). Abdullah did not challenge this aspect of the district court's ruling.

Finally, Idaho law expressly states that courts "shall have no power" to consider substantive claims that have been deemed waived. I.C. § 19-2719(5). Nevertheless, Abdullah asserts that this Court should grant an exception to Idaho Code section 19-2719 and reverse the district court's ruling dismissing his substantive claims. Abdullah does not support his request with argument or authority. This Court will not consider an issue that is not supported by argument or authority. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)). "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Id.* (citing *Inama v. Boise Cnty. ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003)).

Based on the foregoing, we conclude that the district court did not err when it dismissed Abdullah's substantive claims.

## C. The district court did not err when it dismissed Abdullah's ineffective assistance of appellate counsel claim concerning his constitutional right to present a defense.

The district court determined that the record refuted Abdullah's claim that he was not allowed to present a defense as required under *Chambers v. Mississippi*, 410 U.S. 284 (1973), and its progeny. The district court stated:

Abdullah claims that he was *not* allowed to present evidence about [his wife's]

9

> struggle with depression and the possibility she committed suicide. The record disproves his claim; suicide was his defense. At trial, trial counsel presented experts and lay witnesses directly on this point. Trial counsel vigorously cross-examined the State's witnesses and presented evidence about Angie's issues with depression, prescription drug use, and suicidal ideation. The record demonstrates the defense and the State both introduced Angie's medical history through her health care professionals, including her OB/GYN, her psychiatrist and her foot doctor.

(Emphasis in original). Thus, the district court dismissed Abdullah's claim.

Abdullah contends that his claim of ineffective assistance of appellate counsel is meritorious because his attorney failed to argue on appeal that Abdullah was prevented from putting on a defense, which violated his constitutional rights. Abdullah asserts that the district court prevented him from introducing key evidence during his trial that would support his contention that his wife committed suicide. More specifically, Abdullah contends the district court precluded him from introducing certain evidence about his wife's life insurance policy, her history of suicidal ideation, and her post-partum depression. Abdullah asserts that, collectively, the exclusion of this evidence was devastating to his defense and violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. Thus, Abdullah contends that appellate counsel was ineffective by failing to raise a claim that Abdullah was denied his constitutional right to present a defense.

**1. This Court employs the two-part *Strickland* test when reviewing claims concerning ineffective assistance of counsel.**

This Court utilizes the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), when reviewing claims concerning ineffective assistance of counsel. *Mitchell v. State*, 132 Idaho 274, 277, 971 P.2d 727, 730 (1998) (citing *Aragon v. State*, 114 Idaho 758, 760–61, 760 P.2d 1174, 1176–77 (1988)). Namely, the applicant "for post-conviction relief must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687–88).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. To survive a motion for summary dismissal, a post-conviction relief

claim must satisfy both of the *Strickland* prongs. *Dunlap 2015*, 159 Idaho 280, 296, 360 P.3d 289, 305 (2015) (quoting *Dunlap 2013*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013)).

To establish that counsel's deficient performance prejudiced the applicant, there must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Dunlap 2015*, 159 Idaho at 297, 360 P.3d at 306 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"[W]hen a claim of ineffective assistance of counsel is based on a failure to raise issues on appeal, '[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.' " *Dunlap 2015*, 159 Idaho at 297, 360 P.3d at 306 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). When reviewing such a claim, this Court focuses on the merits of the omitted claim. *Id.* (quoting *Hurles v. Ryan*, 752 F.3d 768, 783 (9th Cir. 2014)). "This evaluation informs the determination whether appellate counsel's decision to omit the claim was objectively unreasonable and whether, but for appellate counsel's failure to raise the claim, there is a reasonable probability that the result . . . would have been different." *Id.*

When evaluating an ineffective assistance of counsel claim, "there is no reason for a court . . . to address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### 2. Criminal defendants have a constitutional right to present a defense.

*Chambers v. Mississippi* stands for the proposition that a criminal defendant has a constitutional right to present a defense. 410 U.S. 284, 294 (1973). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses . . . have long been recognized as essential to due process." *Id.* "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful

opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks and citations omitted). With that said, however, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 466 U.S. at 302. As this Court has stated:

> A defendant's . . . right to present evidence is fundamental; however, this right is subject to reasonable limitations. *U.S. v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, [1264,] 140 L. Ed. 2d 413, 418 (1998); *see also Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045, 35 L. Ed. 2d 297, 308 (1973). The exclusion of evidence does not impair the defendant's right "to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they serve.' " *Scheffer*, 523 U.S. at 308, 118 S. Ct. at 1264, 140 L. Ed. 2d at 418 (quoting *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S. Ct. 2704, 2711, 97 L. Ed. 2d 37, 48 (1987)). The exclusion is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.* With the exercise of the defendant's right to present evidence, the rules of procedure and evidence must be complied with to assure both fairness and reliability in the ascertainment of guilt or innocence. *Chambers*, 410 U.S. at 302, 93 S. Ct. at 1049, 35 L. Ed. 2d at 312.

*State v. Perry*, 139 Idaho 520, 523, 81 P.3d 1230, 1233 (2003).

Stated more concisely, the United States Constitution guarantees criminal defendants a meaningful opportunity to put on a complete defense. *Crane*, 476 U.S. at 690. Nevertheless, a criminal defendant must still comply with the rules of procedure and evidence to ensure a fair and reliable trial. *Chambers*, 410 U.S. at 302.

### 3. Abdullah was not prejudiced by appellate counsel's failure to make a *Chambers* argument.

Because this Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," we focus our analysis on the second prong of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 697.

As the district court observed, Abdullah was permitted to present a vigorous defense that included evidence supporting his contention that his wife was depressed and committed suicide. The district court recognized that trial counsel presented experts and lay witnesses directly on this point. In addition, Abdullah's trial counsel vigorously cross-examined the State's witnesses and presented evidence about Angie's issues with depression, prescription drug use, and suicidal ideation. For example, Abdullah retained Dr. Clay Ward to review Angie's medical and mental

health records. "[Dr.] Ward, a licensed psychologist, opined that Angie had suicidal thoughts and displayed suicide risk factors based on his review of medical and autopsy records." *State v. Abdullah*, 158 Idaho 386, 412, 348 P.3d 1, 27 (2015). Dr. Ward also testified that Angie suffered from depression and was treated with various medications. As this Court stated in *Abdullah*, "whether or not Angie committed suicide was a central issue throughout the trial . . . ." *Id.* at 436, 348 P.3d at 51.

Although Abdullah was precluded from introducing evidence about his wife's life insurance policy, this Court previously held that the district court's decision to exclude this evidence did not constitute error. *Abdullah*, 158 Idaho at 440 ("[T]he district court properly exercised its discretion to determine the probative value [of the life insurance policies] was substantially outweighed by the danger of unfair prejudice, confusing the issues, and waste of time."). This Court held "[t]he life insurance policies were an *extraneous piece of information* that had little to do with the case." *Id.* (emphasis added). "Further, any error was harmless because beyond a reasonable doubt any error in the exclusion of Angie's life insurance policy did not contribute to the verdict obtained." *Id.* (citation omitted).

Additionally, the State presented a strong case against Abdullah. *See, e.g.*, *id.* at 443, 348 P.3d at 58 (stating there was overwhelming evidence establishing Abdullah's guilt). Evidence concerning Abdullah's guilt included: statements made by Abdullah that it was acceptable to kill one's wife in his culture under certain circumstances; testimony revealing that Abdullah could not have been in Salt Lake City, Utah, at the time Angie was murdered; Abdullah's procurement of a plastic bag that matched the type of plastic bag that was placed around Angie's head; Abdullah's acquisition of a Halloween cape and gasoline cans in Salt Lake City that matched the Halloween cape and a gasoline can that were found at the house where Angie died; Abdullah asking a friend to lie to the police about the gasoline cans and related matters; gasoline found at the house where Angie died that had an additive that was found in gasoline sold in Salt Lake City; and hairs on Abdullah's arms that had been exposed to a high amount of heat. *Id.* at 406–10, 348 P.3d at 21–25.

In sum, Abdullah offered a vigorous defense based on his contention that his wife was depressed and committed suicide. Further, the exclusion of the evidence in question here was not arbitrary or disproportionate. Therefore, the exclusion of the evidence did not violate Abdullah's right to present a defense under the Sixth Amendment or the Fourteenth Amendment to the

13

United States Constitution. Based on the record and the strength of the State's case, we conclude that the outcome of Abdullah's consolidated appeal would not have changed even if appellate counsel had raised a claim under *Chambers* on appeal. Stated differently, we conclude that Abdullah has failed to satisfy the second prong of the *Strickland* test because there was no prejudice.

Because Abdullah has failed to raise a genuine issue of material fact that establishes a reasonable probability that, but for appellate counsel's errors, the result of the consolidated appeal would have been different, we affirm the district court's decision dismissing Abdullah's ineffective assistance of appellate counsel claim concerning his constitutional right to present a defense.

**D. The district court did not err when it dismissed Abdullah's claim that appellate counsel was ineffective by failing to raise a constitutional objection to certain testimony presented at trial.**

The district court determined that the evidentiary rulings at Abdullah's trial were proper and did not violate Abdullah's due process rights to a fair trial. Thus, the district court dismissed Abdullah's claim that appellate counsel was ineffective by failing to raise constitutional objections to certain trial testimony.

Abdullah asserts the district court erred when it rejected his claim because "[t]rial counsel only raised state law evidentiary objections for and against the testimony that . . . was wrongly admitted or excluded." He argues that trial counsel failed to object, however, to the admission or exclusion of testimony based on violations of Abdullah's constitutional rights under *Chambers*. Thus, Abdullah contends that, by failing to raise this constitutional issue, appellate counsel was ineffective.

Abdullah's argument primarily focuses on three areas of testimony from his trial: (1) statements that Angie made to her attorney; (2) evidence provided by various health professionals that provided care to Angie; and (3) statements concerning cultural differences between Abdullah's native country and the United States of America. Abdullah asserts these "due process violations further tilted the field in favor of the State by poisoning the jury with evidence that Mr. Abdullah was a bad husband . . . ." Abdullah contends that the district court made a number of erroneous rulings concerning the admissibility of evidence that "*combined* to violate [his] constitutional right to a fair trial." (Emphasis in original). Abdullah acknowledges that his constitutional claim was not preserved below, but argues that "[t]his violation rises to the

14

level of fundamental error."

An applicant for post-conviction relief must establish both deficient performance and prejudice to prevail on an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the first prong of deficient performance, the applicant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To establish the second prong of prejudice, the applicant "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

When a claim has not been preserved because a timely objection was not made to an alleged error, the applicant must establish fundamental error. *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). "Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless." *Id.* This Court clarified the second and third prongs of the "*Perry* test" in *State v. Miller*, 165 Idaho 115, 443 P.3d 129 (2019). Because *Miller* was issued after Abdullah's consolidated appeal was decided in 2015, however, we employ the original three-prong *Perry* test here.

As previously mentioned, this Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Thus, we focus our analysis on the second prong of the *Strickland* test—prejudice. In order for Abdullah to show he was prejudiced by appellate counsel's failure to pursue this issue, he must establish a reasonable probability that the claim would have succeeded on appeal. That is a difficult task, however, because Abdullah did not preserve his constitutional argument below. Thus, Abdullah must establish fundamental error under *Perry*. Even if Abdullah could satisfy the first and second prongs of the *Perry* test, Abdullah must still show "that the error affected the defendant's substantial rights, meaning . . . that it must have affected the outcome of the trial proceedings." *Perry*, 150 Idaho at 226, 245 P.3d at 978. This Court has already held, however, that the district court did not err by admitting Angie's out-of-court statements. *State v. Abdullah*, 158 Idaho 386, 437, 348 P.3d 1, 52 (2015).

Further, this Court held that even if Angie's out-of-court statements were improperly admitted, it was harmless error. *Id.* ("[W]e conclude that any error in the admission of Dr. Williams, Seabolt, Seybold, or Kristal's testimony of Angie's out-of-court statements was harmless."). Similarly, this Court has held that the district court did not err by admitting Abdullah's out-of-court statements. *Id.* at 439, 348 P.3d at 54.

> I.R.E. 403 requires the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." In this case, Abdullah's statement was prejudicial because it supports an inference that Abdullah believed he could kill his wife without offending those in his community with similar views. However, Abdullah's statement was highly probative for the very same reason. The statement assists the State in proving its case because it goes directly towards Abdullah's state of mind and motive for the murder.

*Id.* (internal citation omitted).

As noted above, this Court has already held that any error concerning the admissibility of Angie's out-of-court statements was harmless. *Id.* at 437, 348 P.3d at 52 ("Assuming all of Angie's out-of-court statements were inadmissible, any error beyond a reasonable doubt did not contribute to the verdict obtained based on the overwhelming evidence against Abdullah and the district court's instructions to the jury."). Consequently, we conclude that Abdullah cannot satisfy the third prong of the *Perry* test—even when the evidentiary rulings concerning Angie's out-of-court statements and Abdullah's out-of-court statements are viewed in a cumulative manner. Moreover, because Abdullah cannot satisfy the *Perry* test, it follows that the outcome of Abdullah's consolidated appeal would not have changed even if appellate counsel had raised Abdullah's claim.

Even when the facts are viewed in a light most favorable to Abdullah, he has failed to establish that the outcome of his appeal would have changed if appellate counsel had raised his constitutional claim. In short, he has failed to show prejudice. Thus, we affirm the district court's dismissal of Abdullah's claim that appellate counsel was ineffective by failing to raise a constitutional objection to certain trial testimony.

**E. The district court did not err when it dismissed Abdullah's claim that appellate counsel was ineffective for failing to challenge the prosecutor's use of PowerPoint slides during closing argument.**

Abdullah claims that "appellate counsel was constitutionally deficient in violation of the Sixth and Fourteenth Amendments for failing to challenge the State's PowerPoint slide

presentation utilized by the prosecution during its closing argument." The district court determined, however, that there was "no reasonable probability that, but for the failure to challenge the admission of the slide[s] on appeal, the outcome would have been different or sufficient to undermine confidence in the outcome." The district court also determined that Abdullah could not "demonstrate fundamental error or show [his] argument would have been a stronger argument than those presented." Thus, the district court dismissed Abdullah's claim.

Abdullah focuses his challenge on the prosecution's PowerPoint slides that show him wearing a kufi cap. He also takes exception to a PowerPoint slide titled "Alibi Hoax." Abdullah argues that the slides showing him wearing a kufi cap improperly focused attention on his ethnicity and appealed to the passions and prejudices of the jurors. Abdullah asserts that the failure to challenge these PowerPoint slides on appeal was due to oversight by appellate counsel. Because the failure to challenge the slides during the consolidated appeal was not for strategic or tactical reasons, Abdullah argues that appellate counsel was ineffective.

As previously discussed, an applicant must establish both deficient performance and prejudice in order to prevail on an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, when a claim has not been preserved because a timely objection was not made to an alleged error, the applicant must establish fundamental error. *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). "Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless." *Id.*

As recognized by the district court, "[b]ecause trial counsel did not object to the slides at trial . . . Abdullah must establish using the identified PowerPoint slides amounted to fundamental error, and that they affected the trial's outcome or undermined confidence in the trial's outcome." We conclude that Abdullah has not satisfied the three-prong test set forth in *Perry*. First, the slides in question did not violate Abdullah's constitutional rights. In assessing whether prosecutorial conduct constitutes a constitutional violation, "[t]he relevant question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal

17

quotation marks and citation omitted). The PowerPoint slides here, when considered in context, do not constitute prosecutorial misconduct. Various exhibits were admitted throughout Abdullah's trial that showed him wearing a kufi cap. In fact, the photograph utilized in the PowerPoint presentation came from one of those exhibits. Additionally, there was testimony throughout the trial that indicated that Abdullah was Muslim. Moreover, the "Alibi Hoax" slide was used to illustrate how Abdullah unsuccessfully tried to establish an alibi—an issue that was examined in detail during his trial. As the district court observed, "accurately describing what Abdullah did in creating an elaborate scenario attempting to generate an alibi that was clearly false is the definition of a hoax." (Footnote omitted). We conclude that the PowerPoint slides utilized by the prosecution during its closing argument did not infect the trial with unfairness. Thus, Abdullah has not "demonstrate[d] that one or more of [his] unwaived constitutional rights were violated." *Perry*, 150 Idaho at 226, 245 P.3d at 978. We also conclude that the PowerPoint slides did not affect the outcome of the trial proceedings. As this Court noted in *Abdullah*, the district court instructed the jury that "[w]hat [the attorneys] say in their . . . closing arguments . . . is included to help you interpret the evidence, but is not evidence." *State v. Abdullah*, 158 Idaho 386, 445, 348 P.3d 1, 60 (2015). Thus, even if the prosecutor engaged in misconduct by utilizing the PowerPoint slides in question, any error was harmless because there is not a reasonable possibility that the error affected the outcome of the trial. Because Abdullah cannot satisfy the *Perry* test, it follows that the outcome of Abdullah's consolidated appeal would not have changed even if appellate counsel had raised Abdullah's claim.

Because Abdullah has failed to raise a genuine issue of material fact that establishes a reasonable probability that, but for counsel's errors, the result of the consolidated appeal would have been different, we affirm the district court's decision to dismiss Abdullah's claim that appellate counsel was ineffective by failing to raise his argument challenging the State's use of PowerPoint slides.

**F. The district court did not err when it dismissed Abdullah's claim concerning the SAPD's alleged conflict of interest with respect to the consolidated appeal.**

The district court dismissed Abdullah's claim concerning the SAPD's alleged conflict of interest in the consolidated appeal on multiple grounds. First, the district court held that Abdullah failed to show that the SAPD labored under a conflict of interest while representing him during his consolidated appeal. Next, the district court held that, even if the SAPD labored under a conflict while representing Abdullah during his consolidated appeal, Abdullah failed to show any

adverse effect caused by the SAPD's representation. Lastly, the district court held that Abdullah knowingly and voluntarily waived any conflict of interest the SAPD may have had while representing Abdullah.

Abdullah contends that the SAPD did have a conflict of interest while representing him during his consolidated appeal. He asserts that "the district court ignore[d] the facts contained in the record regarding what it found to be an actual conflict held by the SAPD." Next, Abdullah argues that he did show an adverse effect caused by the SAPD's conflict of interest. He points to three claims the SAPD may not have raised during the consolidated appeal because of the conflict of interest: (1) the possibility that the SAPD did not contest a trial court ruling denying a motion to continue his first post-conviction relief case because the SAPD was too enmeshed in the underlying issue; (2) the possibility that the SAPD did not raise a judicial bias claim in his consolidated appeal because the SAPD had previously discussed the matter with trial counsel; and (3) the alleged conflict of interest "damaged the [consolidated] appeal by undermining the SAPD's credibility before this Court." Finally, Abdullah asserts that his waiver concerning the SAPD's conflict of interest during his first post-conviction case was not knowing, intelligent, and voluntary.

"A petition for post-conviction relief may raise the issue of conflicted counsel under a claim of ineffective assistance of counsel." *Chippewa v. State*, 156 Idaho 915, 919, 332 P.3d 827, 831 (Ct. App. 2014) (citation omitted). "In reviewing claims for ineffective assistance of counsel the Court utilizes the two-prong test set forth in *Strickland . . . .*" *Mitchell v. State*, 132 Idaho 274, 277, 971 P.2d 727, 730 (1998). The applicant for post-conviction relief "must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different." *Id.* There is a presumption of prejudice under the second prong of the *Strickland* test when counsel is burdened by an actual conflict of interest, but only if the applicant shows the conflict adversely affected counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). An applicant may waive a conflict of interest if the waiver is obtained through informed consent. *State v. Severson*, 147 Idaho 694, 705, 215 P.3d 414, 425 (2009) (citation omitted).

During Abdullah's first post-conviction relief proceedings, the district court became concerned about a potential conflict of interest involving the SAPD. Therefore, the district court appointed attorney Roark to investigate the potential conflict of interest and provide independent

legal advice to Abdullah. The court specified: "In order to ensure that Mr. Abdullah knowingly, intelligently and voluntarily waives this conflict, the [c]ourt hereby appoints [Roark] to independently advise Mr. Abdullah about the conflict and its potential effect on this post-conviction case, *as well as any future proceedings*, including federal habeas or successive post-conviction actions." (Emphasis added). Abdullah initially declined to waive any conflict, but subsequently changed his position. After Abdullah agreed to waive any conflict of interest, the district court stated "you have waived conflict which means you cannot raise it at a later time. You cannot raise it on post-conviction or on *appeal*." (Emphasis added). Abdullah responded by stating, "I understand."

Abdullah now asserts that the "waiver in his original post-conviction matter was not knowing, intelligent, and voluntary." Abdullah states that he was not informed "that the SAPD's conflict of interest could not be limited to only its representation of me in my post-conviction case." He asserts that, if he had been informed that "the SAPD's conflict of interest was also in my direct appeal, I would not have waived the conflict of interest and, instead, would have demanded new counsel to represent me in my initial post-conviction case as well as my direct appeal."

Abdullah's assertion that his waiver was not knowing, intelligent, and voluntary is not supported by the record. Rather, the record indicates that the district court took great care to ensure that Abdullah received independent legal advice from a seasoned criminal defense attorney and to confirm his waiver was knowing, intelligent, and voluntary. Further, the record supports the proposition that Abdullah knew the waiver applied to any future proceedings, including appeals. Thus, even if Abdullah could establish that the SAPD had an actual conflict of interest with respect to his consolidated appeal, he has waived any conflict.

Because Abdullah waived any conflict of interest involving the SAPD, and because we conclude his waiver was knowing, intelligent, and voluntary, we need not consider Abdullah's other arguments. We affirm the district court's dismissal of Abdullah's conflict of interest claim.

### G. The district court did not err when it dismissed Abdullah's claim concerning ineffective assistance of trial counsel.

Abdullah raises several ineffective assistance of trial counsel claims. The district court dismissed the claims because they were time-barred under Idaho Code section 19-2719, and because Abdullah knew or should have known about the claims at the time he pursued his first petition for post-conviction relief. The district court also dismissed Abdullah's ineffective

assistance of trial counsel claims because Abdullah did not support his claims with admissible evidence.

Abdullah asserts the district court erred when it dismissed his claims concerning ineffective assistance of trial counsel. In making this argument, Abdullah correctly notes that "[t]he district court held that any claim alleging ineffectiveness of trial counsel was untimely and impermissibly successive." He does not, however, challenge the district court's rulings concerning untimeliness and successiveness. Rather, Abdullah simply states that he "personally disagrees with a number of the comments the district court made on the substance of the claims." Abdullah then proceeds to list and analyze seven ineffective assistance of trial counsel claims. Abdullah claims trial counsel was ineffective because counsel: (1) failed to submit evidence about a trip that he took to Nashville, Tennessee; (2) botched an attempt to admit a letter that his wife had written; (3) did not competently pursue a motion for change of venue; (4) did not elicit testimony about his plans to relocate to the Republic of South Africa; (5) failed to establish an alternative timeline for his whereabouts on the date his wife was murdered; (6) allowed the State to characterize one of his children as his favorite child; and (7) did not retain an expert to examine computer evidence.

In a capital case, ineffective assistance of trial counsel claims must be filed within 42 days of judgment. I.C. § 19-2719(3). If an applicant for post-conviction relief fails to comply with the statute of limitations, "he shall be deemed to have waived such claims for relief as were known, or reasonably should have been known." I.C. § 19-2719(5). There is an exception to this time limitation "for issues that were not known or could not reasonably have been known" within 42 days of judgment. I.C. § 19-2719(5)(a). Idaho Code section 19–2719 places the burden on the applicant to make a prima facie showing that the issues were not known or could not reasonably have been known. *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010). The applicant must provide "material facts stated under oath or affirmation by credible persons with first hand knowledge that would support the issue or issues asserted." I.C. § 19-2719(5)(a).

Here, the district court dismissed Abdullah's ineffective assistance of trial counsel claims on two grounds. First, the district court concluded that Abdullah did not comply with the 42-day limitation set forth in Idaho Code section 19-2719 and no exception applied. The district court stated: "Not only does Abdullah fail to even contend he did not know, and could not have known, about these claims, Abdullah offers absolutely no evidence that he did not know and

21

could not have timely known about these claims of trial counsel." Thus, the district court held that all of Abdullah's ineffective assistance of trial counsel claims were time-barred.

Second, the district court concluded that Abdullah did not support his ineffective assistance of trial counsel claims with admissible evidence as required by Idaho Code section 19-2719(5)(a). The district court found "Abdullah completely fail[ed] to support the individual claim[s] themselves with admissible and material evidence based on first-hand knowledge stated under oath or affirmation." Therefore, the district court also dismissed Abdullah's ineffective assistance of trial counsel claims on this alternative basis.

Abdullah's argument that the district court erred when it dismissed his ineffective assistance of trial counsel claims fails. First, the ineffective assistance of trial counsel claims are time-barred because they were not filed within 42 days of judgment as required by Idaho Code section 19-2719(3). Additionally, Abdullah does not qualify for an exception to the 42-day limitation contained in Idaho Code section 19-2719(5)(a) because he knew, or reasonably should have known, about the claims at the time he filed his first petition for post-conviction relief. This Court has stated that ineffective assistance of trial counsel claims should be reasonably known immediately upon the completion of a trial. *State v. Rhoades*, 120 Idaho 795, 807, 820 P.2d 665, 677 (1991) (footnote and citations omitted). Abdullah knew or should have known about his ineffective assistance of trial counsel claims several years before he filed his Successive Petition and Supplement. As such, Abdullah's substantive claims are deemed waived under Idaho law. I.C. § 19-2719(5).

Second, Abdullah failed to address the district court's dismissal of his ineffective assistance of trial counsel claims based on a lack of admissible evidence. When a district court grants summary judgment on two independent grounds, and the appellant challenges only one of those grounds on appeal, this Court will affirm the district court's decision. *Brown v. Greenheart*, 157 Idaho 156, 165, 335 P.3d 1, 10 (2014) (quoting *Campbell v. Kvamme,* 155 Idaho 692, 696, 316 P.3d 104, 108 (2013)). Here, the district court dismissed Abdullah's ineffective assistance of trial counsel claims because they were time-barred *and* because Abdullah did not support his claims with admissible evidence. Abdullah does not address the district court's holding that Abdullah's claims failed due to the absence of admissible evidence. Stated differently, the district court dismissed Abdullah's ineffective assistance of trial counsel claims on two independent grounds, but Abdullah challenged only one of those grounds on

appeal.

For these reasons, we affirm the district court's dismissal of Abdullah's ineffective assistance of trial counsel claims.

## IV. CONCLUSION

Based on the foregoing, we affirm the district court's order summarily dismissing Abdullah's Successive Petition and Supplement.

Chief Justice BEVAN, Justices BURDICK, STEGNER, and Justice Pro Tem HORTON CONCUR.