181 P.3d 450

Brian JORGENSEN dba Medicine Man Pharmacy and Medicine Man Pharmacy, Inc., an Idaho corporation, Plaintiffs–Respondents–Cross Appellants,

v.

C. Michael COPPEDGE and Karen Coppedge, individually and as the last board of directors and shareholders of Acology Prescription Compounding, Inc., and Acology Prescription Compounding, Inc., a dissolved Idaho corporation, Defendants–Appellants–Cross Respondents.

No. 33964.

Supreme Court of Idaho,
Lewiston, March 2008 Term.

March 27, 2008.

Dean & Kolts, Coeur d'Alene, for appellants. Charles Dean argued.

James, Vernon & Weeks, P.A., Coeur d'Alene, for respondents. Susan Weeks argued.

EISMANN, Chief Justice.

This is an appeal from an order granting a new trial in an action to recover damages for the breach of a covenant not to compete. Because the covenant not to compete is void, we vacate the order granting a new trial and remand this case with instructions to dismiss the complaint with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

Brian Jorgensen is the owner of Medicine Man Pharmacy, Inc., which operated a pharmacy in Coeur d'Alene under the name of Medicine Man Pharmacy. For convenience the Plaintiffs will be referred to collectively as "Medicine Man." During the mid–1990's, Medicine Man employed C. Michael Coppedge as a pharmacist in its Coeur d'Alene pharmacy.

In 1997, Michael Coppedge announced that he was considering leaving his employment to start a "compounding" business. Compounding is the preparation of a specialized drug product to fill an individual patient's prescription when an approved, commercial drug is not appropriate or available. At that time, Medicine Man did not engage in compounding drugs. Ultimately, Medicine Man and Michael Coppedge agreed to enter into a business arrangement in Coeur d'Alene under which the compounding business would be part of Medicine Man Pharmacy. Coppedge later named the compounding business the Acology Prescription Compounding Center. At trial, Michael Coppedge claimed the business arrangement was a partnership, and Medicine Man claimed that Coppedge was an employee.

Although the business was successful, the parties' relationship was not. On October 15, 2000, they entered into a written agreement to terminate their relationship. The parties to the agreement were Michael and Karen Coppedge and an Idaho corporation they had

formed named Acology Prescription Compounding, Inc., herein collectively called "the Coppedges," and Medicine Man. Under the agreement, the Coppedges agreed to pay $20,000 for a computer system, for the prescription compounding records in that system and in another computer system, and for Medicine Man's fifty percent interest in products and equipment purchased for compounding. The agreement also provided that the Coppedges were the sole owners of Acology Prescription Compounding, Inc., and that they would own two web sites. In addition to the $20,000 purchase price, the Coppedges agreed to pay Medicine Man $12,000 per month as long as they "remain[ ] active in the compounding business in the Coeur d'Alene area." Medicine Man agreed not to compound any pharmaceutical prescription items in its Coeur d'Alene store or in any future Idaho stores it may open within the Coeur d'Alene market area. It also agreed to sell the Coppedges pharmaceutical products at its cost and to lease the Coppedges space.

The parties continued to have disputes between them. In October 2003, the Coppedges closed their compounding business in Coeur d'Alene, dissolved Acology Prescription Compounding, Inc., and moved to Florida. There, they formed a new corporation with the same name and resumed their compounding business. They also continued selling compounded prescriptions to some of their Coeur d'Alene customers. Medicine Man demanded that the Coppedges continue paying $12,000 per month under the agreement because they were still active in the compounding business in the Coeur d'Alene area. The Coppedges refused to do so.

On July 12, 2004, Medicine Man filed this lawsuit alleging it was entitled to damages for breach of the agreement, breach of any implied contract, unjust enrichment, and quantum meruit. The Coppedges answered and filed a counterclaim seeking damages for fraud, breach of the agreement, unfair competition, and intentional interference with a prospective business advantage.

The case was tried in October 2005. The only claims submitted to the jury were those based upon breach of the agreement and

fraud. The Coppedges contended that the monthly payment provision requiring them to pay $12,000 per month while they were "active in the compounding business in the Coeur d'Alene area" only applied if their business was physically located in the Coeur d'Alene area. They also argued to the district court that the monthly payment provision constituted an invalid covenant not to compete. The district court rejected that argument, and the jury rejected the Coppedges' interpretation of the payment provision. The jury returned a special verdict finding that the Coppedges had breached the agreement causing Medicine Man damages in the sum of $68,754; that Medicine Man had breached the agreement, but had not caused the Coppedges any damages; and that Medicine Man had not committed fraud.

On August 15, 2006, Medicine Man moved for a new trial on damages and/or an additur on the grounds that there was an irregularity in the proceedings of the jury and jury misconduct, that the jury awarded inadequate damages appearing to have been given under the influence of passion or prejudice, and that the amount of damages awarded was not supported by the evidence. The motion was argued on October 31, 2006. The next day the court issued an order denying the motion based upon alleged inadequate damages or insufficiency of the evidence. It gave Medicine Man additional time to provide a transcript of the jury selection proceedings if it desired to pursue the claim of juror misconduct. Medicine Man did so, and the remaining issues on the motion for a new trial were argued on January 24, 2007. On February 14, 2007, the district court issued its order granting a new trial on the ground of juror misconduct. It reserved deciding whether the new trial would be on all issues or only damages, and it refused to condition the grant of a new trial upon an additur. The Coppedges appealed, and Medicine Man cross-appealed.

## II. ANALYSIS

The Coppedges raise three issues on appeal: (1) Did the district court err in ruling that the monthly payment provision in the parties' agreement did not include an unen-

forceable covenant not to compete?; (2) Was the jury's interpretation of the monthly payment provision in the parties' agreement clearly erroneous?; and (3) Did the district court err in granting the motion for a new trial on the ground of jury misconduct? Medicine Man likewise raises three issues on its cross-appeal: (1) If the monthly payment provision in the parties' agreement is invalid, did the district court err in refusing to instruct the jury on Medicine Man's claims based upon breach of an implied contract and unjust enrichment?; (2) Did the district court err in instructing the jury as to the definition of a partnership?; and (3) Is Medicine Man entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–120(3)? We need only address the first issue raised by the Coppedges and the first and third issues raised by Medicine Man.

## A. Did the District Court Err in Ruling that the Monthly Payment Provision in the Parties' Agreement Did Not Include an Unenforceable Covenant Not to Compete?

 "When construing a contract, a court must first decide whether it is ambiguous, which is a question of law. A contractual provision will be found ambiguous if it is reasonably subject to conflicting interpretations.... Interpretation of an unambiguous document is a question of law." *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 46, 72 P.3d 877, 886 (2003) (citations omitted). The parties' agreement contains the following provisions:

> Medicine Man Pharmacy agrees not to compound any pharmaceutical prescription items in its Coeur d'Alene store, or any future stores Medicine Man may open in the Coeur d'Alene market in the future— any store outside of the state of Idaho is not considered part of the Coeur d'Alene market area.

. . . .

> Acology agrees to pay Brian Jorgensen $12,000.00 on or before the 10th of each month for the preceding month's activity to run continuously as long as Acology remains active in the compounding business in the Coeur d'Alene area. If the owners of Acology should choose to sell out, the new buyer(s) will be responsible to honor these terms or come to some type of settlement with Brian Jorgensen. If there is not a buyer and Acology closes, Medicine Man Pharmacy will have the right to immediately begin compounding prescriptions in the Coeur d'Alene market and this agreement becomes null and void upon receipt of the last months' fee.

In their arguments to the district court, the parties focused on the second paragraph quoted above. The district court ruled that it did not constitute a covenant not to compete. The court stated, "It's not a prohibition against competition. It's a quid pro quo. If you are going to remain active in the Coeur d'Alene area, you are going to pay $12,000. You got a choice. That's the way I view it." In so holding, the district court erred. The above paragraphs unambiguously constitute reciprocal covenants not to compete.

The first paragraph quoted above is a covenant by Medicine Man not to compete against the Coppedges in the business of compounding prescriptions in the Coeur d'Alene market. The second paragraph constitutes a covenant by the Coppedges[1] not to compete in that same business and market area.

If the Coppedges are "active in the compounding business in the Coeur d'Alene area," they must pay Medicine Man $12,000 per month. A requirement that they pay money in order to engage in a particular

---

1. The parties' agreement states that "Acology will refer to C. Michael Coppedge and Karen A. Coppedge and Acology Prescription Compounding Inc." Thus, it required payment of the $12,000 per month if either the Idaho corporation named Acology Prescription Compounding, Inc., or Michael Coppedge or Karen Coppedge was active in the compounding business in the Coeur d'Alene area. Since the corporation had been dissolved, it was no longer active in any business. The Florida corporation formed by the Coppedges was not a party to the agreement because it did not even exist when the agreement was executed. Medicine Man's claim was that the Coppedges owed the monthly $12,000 payment because Michael Coppedge was still active in the compounding business in the Coeur d'Alene area.

business in a defined area is a form of a covenant not to compete. *Intermountain Eye and Laser Centers, P.L.L.C. v. Miller,* 142 Idaho 218, 224, 127 P.3d 121, 127 (2005). The payment is clearly not the purchase price of good will or some other asset. The payments are based upon the Coppedges being active in the compounding business in the Coeur d'Alene area and upon Medicine Man not competing with them, not upon any stated or calculable purchase price. They must pay Medicine Man in order to exercise their right to engage in the business of compounding prescriptions in that market. The payment is likewise not simply compensation for Medicine Man's covenant not to compete in the Coeur d'Alene area. The parties' agreement does not provide for the termination of that covenant except by the Coppedges ceasing to remain active in the compounding business in the Coeur d'Alene area. Under the parties' agreement, the two covenants are inseparable.

 "Covenants not to compete are valid when they are reasonable as applied to the covenantor, the covenantee, and the general public.... A non-compete covenant must be reasonably limited as to time, scope, and territorial extent." *Bybee v. Isaac,* 145 Idaho 251, 257, 178 P.3d 616, 622 (Idaho 2008). The covenants not to compete in this case are not limited as to time. They continue indefinitely—as long as the Coppedges remain active in the compounding business in the Coeur d'Alene area.

 The district court stated that if the monthly payment provision was a covenant not to compete, it "is not indefinite as to duration at the present time." It is unclear what the court meant by that statement. If the court meant that it was not indefinite in duration because it was still in effect, such reasoning is incorrect. The test is whether the covenant not to compete includes a provision limiting its duration to a reasonable time, not whether the person bound is still subject to its provisions. If the court meant that the period from October 15, 2000, (the date of the agreement) until October 28, 2005, (the date of the ruling) was a reasonable time for the covenant to be in effect, that reasoning is also incorrect. The issue is whether the parties' agreement limits the duration of the covenant not to compete to a reasonable time, not whether the court believes that the length of time it has been in effect is reasonable.

Since the mutual covenants not to compete do not contain any limitation as to time, they are void and unenforceable. *Freiburger v. J–U–B Engineers, Inc.,* 141 Idaho 415, 111 P.3d 100 (2005). Therefore, Medicine Man is not entitled to recover for the Coppedges' failure to make the $12,000 monthly payments required by the agreement. The order granting a new trial must be vacated because Medicine Man is not entitled to a new trial seeking to recover on void and unenforceable covenants not to compete.

**B. If the Monthly Payment Provision in the Parties' Agreement is Invalid, Did the District Court Err in Refusing to Instruct the Jury on Medicine Man's Claims Based Upon Breach of an Implied Contract and Unjust Enrichment?**

 In its complaint, Medicine Man alleged it was also entitled to recover under the theories of an implied contract and unjust enrichment. The district court did not instruct the jury on those theories. Medicine Man contends that if the monthly payment term is unenforceable, it is entitled to a trial on those theories.

 With respect to the claim based upon an implied contract, "[a] contract implied in fact exists where there is no express agreement but the parties' conduct evidences an agreement." *Barry v. Pacific West Constr., Inc.,* 140 Idaho 827, 834, 103 P.3d 440, 447 (2004). In this case, the parties had an express agreement. Only the covenants not to compete in that agreement are unenforceable. Medicine Man does not present any argument or authority supporting the proposition that when a portion of an express agreement is unenforceable, a party can then recover on an implied agreement. "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske,* 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

Relying upon the *Barry* case, Medicine Man also contends that it is entitled to recover damages under the theory of unjust enrichment. The Coppedges drafted the provision requiring them to pay $12,000 per month as long as they were active in the compounding business in the Coeur d'Alene area. Medicine Man argues, "It would be unduly harsh to deny Medicine Man Pharmacy the ability to recover the value of the acology division acquired by Coppedges due to utilization in the contract of a payment term proposed by the Coppedges."

In *Barry*, a subcontractor and general contractor entered into a contract that this Court held was unlawful because the subcontractor did not have the required public works license. The subcontractor had submitted a bid to perform specified work on a public works construction project, and the general contractor had accepted that bid. The subcontractor did not sign the written contract provided by the general contractor because it required the subcontractor to perform work not included in the bid. Nevertheless, the subcontractor began working at the construction site. About one month later, the general contractor learned that the subcontractor did not have the required public works license. To resolve that issue, the general contractor insisted that the subcontractor's employees become employees of the general contractor, and the subcontractor agreed. About a week later, the general contractor barred those employees from the work site because of the ongoing dispute with the subcontractor regarding the scope of the work included in the subcontractor's bid. The subcontractor then sued for breach of contract to recover damages for the work it had performed. The district court held that the bid and its acceptance constituted a contract and awarded damages to the subcontractor. On appeal, this Court *sua sponte* raised the issue that the contract was illegal because a statute made it unlawful for the subcontractor to act in the capacity of a public works contractor without having the required license. Even though the contract was illegal, this Court allowed the subcontractor to recover under the theory of unjust enrichment. However, we held that any such recovery could not include the subcontractor's lost profits because allowing such recovery would in effect enforce the illegal contract.

The *Barry* case has no application to this one. The essence of unjust enrichment "lies in the fact that the defendant has received a benefit which it would be inequitable for him to retain." *Continental Forest Prods., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974). Medicine Man does not point to any benefit conferred upon the Coppedges by the covenants not to compete that it would be inequitable for the Coppedges to retain.

Medicine Man's only argument in this regard is that voiding the covenants not to compete would "deny Medicine Man Pharmacy the ability to recover the value of the acology division acquired by Coppedges." However, as stated above there is nothing in the parties' agreement indicating that the $12,000 monthly payments were in any way related to the value of any asset purchased by the Coppedges. After paying the $20,000 for the computer records, the computer system, and the products and equipment for compounding, the Coppedges could have taken those items and left without owing any further sums. They were required to make the $12,000 monthly payments only if they remained active in the compounding business in the Coeur d'Alene area. Had it known the covenants not to compete were unenforceable, Medicine Man may have demanded more compensation to dissolve the business relationship between itself and the Coppedges. Assuming that is true, voiding of the covenants not to compete does not entitle Medicine Man to recover damages for unjust enrichment.

## C. Is Medicine Man Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12–120(3)?

Medicine Man seeks an award of attorney fees on appeal pursuant to Idaho Code § 12–120(3) on the ground that this is an action to recover on a commercial transaction. Because Medicine Man is not the prevailing party on this appeal, it is not entitled to an award of attorney fees under that

statute. *J.R. Simplot Co. v. Bosen,* 144 Idaho 611, 617, 167 P.3d 748, 754 (2006).

### III. CONCLUSION

We vacate the order granting a new trial and remand this case with instructions to enter judgment dismissing the complaint with prejudice. We award costs on appeal to the appellants.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.

