# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48748

STATE OF IDAHO,              )

                               )

    Plaintiff-Respondent,     )        **Boise, November 2021 Term**

                               )

v.                          )        **Opinion Filed: March 17, 2022**

                               )

AARON SHANE TOWER,     )        **Melanie Gagnepain, Clerk**

                               )

    Defendant-Appellant.      )

_____)

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Deborah A. Bail, District Judge.

The district court judgment is <u>affirmed.</u>

Eric D. Fredericksen, State Appellate Public Defender, attorney for Appellant. Sally Cooley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. John McKinney argued.

_____

BEVAN, Chief Justice

Aaron Shane Tower appeals from the district court's order denying his motion to suppress evidence obtained following a warrantless arrest. Tower argues he was unlawfully arrested for trespassing without probable cause or a warrant, thus, the evidence obtained during a subsequent search should have been suppressed. Tower's appeal was first heard by the Idaho Court of Appeals, which affirmed his conviction. Tower then petitioned for review by the Idaho Supreme Court, which was granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On July 11, 2018, Tower's mother, Michelle, contacted the Boise Police Department (BPD) and spoke to Officer Hilton to report that her son, Tower, had threatened to "blow his head off in [her] house." The State also alleged that Tower posted on social media that he was driving

from Nevada to Idaho with a plan to shoot Michelle and his stepfather—however, it is not entirely clear from the record if this was the same threat Michelle reported or a different threat. In any event, Michelle was out of town at the time. Tower's grandmother, Sandra, was at home, however, because she was watching the house while Michelle was away. Michelle told Officer Hilton she was concerned for Sandra's safety and said she did not want Tower on her property.

The next day, Tower had several interactions with police, including two encounters with Cpl. Dustin (Dustin) near Michelle's house. Dustin first responded to a complaint from a neighbor that Tower was camping in front of a vacant house across the street from Michelle's house. When Dustin found Tower, he instructed him to leave the yard, explaining he could not camp there. Dustin and Tower then had what Dustin described as a "contentious conversation," with Tower complying afterward. Later that day, BPD received a second complaint about Tower and returned to Michelle's house. Dustin responded, as did other officers, and found Tower across the street in a common area, further down from where Dustin found Tower earlier. As other officers spoke to Tower, Dustin spoke to Sandra whom he described as "extremely fearful."

On July 13, Dustin and Officer Richmond again responded to a 911 call placed by Tower stating, "his grandmother pointed a gun to his head." As Dustin was en route to the scene with Officer Richmond, they received a computer dispatch report that Richmond read to Dustin. The report, though not entirely clear, noted the calling party "advised he [was] previously not allowed on the property. He is now, and she is not aware." Dustin testified this information from the log was "odd" and "confusing" because, based on his knowledge at the time, "[Tower] was still unwelcome [at his mother's home]. He was trespassing. He was not supposed to be at the property."

Once officers arrived at Michelle's residence, Tower exited the garage, and Dustin informed Tower he was under arrest for trespassing. According to Dustin, Tower "immediately resisted" and "verbally was getting agitated." Despite Dustin telling Tower he was under arrest, Tower tried to walk away and began to take off his jacket. Dustin instructed Tower to get on the ground, pulled his taser from his holster and pointed it toward Tower. Tower began to comply at this point and officers "went hands-on with him," at which time Tower began to struggle more. Although he continued to struggle against the handcuffs, Tower ultimately complied with instructions. As Dustin was trying to arrest Tower, Tower repeatedly said he had permission to be on the property. According to Dustin, he did not terminate the arrest because based on the totality

of the circumstances, the possibility a weapon was present, the claim Tower's grandmother had pointed a gun at him, and Tower's demeanor on scene, Dustin believed it was safer to place Tower in handcuffs than to leave him free to respond physically.

Dustin searched Tower after his arrest and discovered a baggie with methamphetamine inside Tower's jacket pocket. After Tower was in custody, Dustin learned from Sandra that Tower had permission to be at the house. Dustin later learned that earlier in the day, Michelle contacted BPD to inform them Tower was allowed on the property. Michelle and David Saunders, Tower's stepfather, both later supplied signed statements attesting to this.

## B. Procedural Background

Tower was charged with possession of a controlled substance and with resisting or obstructing an officer. Tower moved to suppress on the grounds the evidence was fruit of an unlawful seizure not based on probable cause. At the hearing on Tower's motion, Dustin and Michelle both testified. Dustin testified to telling Tower he was under arrest for trespassing, and subsequently placing him under arrest for resisting and obstructing after Tower resisted Dustin's efforts to handcuff him.

At the end of that hearing, the district court orally denied Tower's motion without either party offering closing argument. The district court ruled that Dustin had reasonable suspicion to detain Tower to gain control over a volatile situation.

Later, Tower entered a conditional guilty plea to possession of methamphetamine and reserved the right to appeal the district court's denial of his motion to suppress. In exchange for the guilty plea, the State dismissed the charge of resisting or obstructing an officer. Tower's appeal was first heard by the Idaho Court of Appeals, which affirmed his conviction.

Tower's opening brief to the Court of Appeals argued that Tower's arrest was illegal because Dustin did not have probable cause to arrest given the information available to Dustin at the time. In the petition for review, Tower alleged the Court of Appeals affirmed the district court's decision on a basis not argued to the district court; that is, that there was reasonable suspicion to detain Tower prior to his arrest for resisting and obstructing. Tower did not challenge the district court's conclusion that his arrest was supported by reasonable articulable suspicion. We granted review.

## II. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Smith*, 168 Idaho 463, 483 P.3d 1006, 1014 (2021). When this Court reviews a district court's order granting or denying a motion to suppress, "the standard of review is bifurcated." *State v. Alvarenga-Lopez*, 169 Idaho 215, 494 P.3d 763, 766 (2021). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* (citing *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019)). Even so, "this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id.* (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)).

## III. ANALYSIS

### A. We affirm the district court's decision denying Tower's motion to suppress because Tower did not properly preserve his argument on appeal.

This Court accepted review of the Court of Appeals' opinion here because Tower's argument about Dustin lacking probable cause appeared at first blush to be a good one. Dustin's near-immediate arrest of Tower upon arriving at the residence likely lacked probable cause. But the challenge for Tower before this Court on review is that the district court's ruling was not grounded on the arrest but whether Dustin had reasonable suspicion to place Tower in custody while "something was going on that warranted further investigation," to quote the district court. Tower's failure to address the basis of the district court's ruling in his opening brief constitutes a waiver of this issue, no matter how convincing his argument is now about the alleged illegal arrest.

After his initial arrest, Tower filed a motion to suppress and memorandum in support of motion to suppress evidence. Tower's motion to suppress sought to suppress all evidence seized on these grounds: "that the evidence in this case was the fruit of an unlawful seizure/detention/search that was not based on probable cause or reasonable suspicion." The memorandum in support of the motion focused on the alleged illegal arrest only—the memorandum did not address the suspicion to support the seizure. In response, the State filed a memorandum in opposition and a hearing was held soon after. Before the district court, the State argued only that Tower was properly arrested for trespass; Tower likewise argued only that the arrest for trespassing was improper.

The district court then made its ruling orally at the end of testimony at the motion to suppress hearing. The district court did not hear from either the State or the defense through closing

argument after the hearing; it simply made an immediate ruling and concluded the search of Tower was a proper search incident to arrest *and* that officers had reasonable articulable suspicion to detain Tower. The district court's explanation established the core of its ruling—which was based on a finding that the officers had *reasonable articulable suspicion* to detain Tower, after which he immediately resisted and obstructed, leading to a lawful arrest for that crime.

The nature of the district court's colloquy is important. The district court noted: "I think the [police] had every reason to kind of put a hold on this situation while they checked it out," and that "this is a situation that more than justified them trying to freeze the situation, at a minimum, and see what is happening." After making its general ruling, Tower's defense counsel asked a "clarifying question," seeking to ensure that the district court considered its ruling under both "the Fourth Amendment to the United States Constitution as well as the Idaho Constitution, Section 1 [sic]. . . ." The district court cut counsel off while making the request but reiterated that it was making its ruling "under both [constitutional] provisions." The district court then stated:

> I am making the ruling that this was a proper search incident to arrest. And this is a proper situation for the authorities to have detained him, to investigate it more fully.
>
> At a minimum, this is a proper situation to detain somebody, to investigate fully about what's going on. That is exactly why you have that kind of stop, is that there are times when the situation needs to be frozen.
>
> And they, in my view, would have had *reasonable articulable suspicion to detain* somebody that something was going on that warranted further investigation. And then when the situation escalates from there to more aggressive resistance in their instructions, then what you do is you move from a situation where looking into it is what you are probably talking about to a situation where - - but when you are looking into it, you are pretty concerned because you have all of these reports from the days before. You have a report from the defendant himself that somebody held a gun to his head, but they know who that is. And they can assess that, anyone in their right mind would have investigated this situation more fully.
>
> And it was reasonable – the steps they took were reasonable law enforcement actions to deal with a situation which moved from checking things out to the more serious situation of having grounds to arrest and grounds to conduct a search incident to arrest.
>
> So that's my ruling.

(Emphasis added). While the district court did mention "proper search incident to arrest" before referencing the officers' right to detain and investigate, it was sufficiently clear from the district court's ruling that the court concluded Tower's detention was based on reasonable suspicion. The district court also noted:

[Y]ou have a situation where you have reports of a person who might be using a weapon to harm others. Then you have a report of somebody else pointing a weapon at [Tower]. They know the person who is pointing the weapon at him is smaller and more elderly than he is because he is a young fit person or he wouldn't be a wildland firefighter. So I think they had every reason to kind of put a hold on this situation while they checked it out. And so – then, of course, he struggles and doesn't respond to commands or instructions, which would raise their concern about maybe something bad had happened in the house. Because that would raise anyone's concern that maybe something bad had just gone down in the house.

Thus, reviewing the district court's dialog/ruling as a whole, the court describes the rationale behind its ruling multiple times: that the officers had reasonable articulable suspicion to detain Tower because "something was going on that warranted further investigation." While Dustin ordered Tower under arrest just after arrival, the district court centered its ruling on reasonable articulable suspicion for the officers to seize Tower, irrespective of Dustin's statement about arresting Tower. The court's conclusion was distinct from the illegal arrest ground that Tower argues on appeal and is a ruling that must have been directly appealed.

In Tower's petition for review, he argues that "the basis upon which the Court of Appeals affirmed the district court's decision was not argued to the district court." He also claims that the district court's ruling at the end of the suppression hearing was unclear and failed to acknowledge that Tower was arrested for trespassing. Certainly, the district court's ruling is not a model of clarity. Even so, the district court plainly ruled that law enforcement had reasonable articulable suspicion to detain Tower and that probable cause to arrest him developed when he resisted their instructions.

Tower's counsel made no formal objection or motion for reconsideration before the district court to establish the basis of its ruling. While this would not normally be required of counsel to preserve the record, there was *no* effort before the district court to clarify the ruling for appeal, and Tower cannot now claim that this lack of clarity supports his position when he had the chance to remedy it below. *See State v. Godwin*, 164 Idaho 903, 914, 436 P.3d 1252, 1263 (2019) (explaining that the "bedrock" of the defendant's argument was present in the brief in support of motion to suppress and memorandum filed below, thus preserving the issue on appeal). And while Tower contends the district court's decision was unclear, raising an objection would have allowed him the opportunity to obtain clarity and also "permit[] the trial court to attempt to correct or avoid the mistake so that it cannot possibly affect the ultimate outcome," which also "discourages a defendant from sandbagging" or "remaining silent about his objection and belatedly raising the

error only if the case does not conclude in his favor." *State v. Dunlap*, 155 Idaho 345, 363, 313 P.3d 1, 18–19 (2013) (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)). Once the appeal was filed, Tower raised no issue at all about the district court's focus.

The Court has explained that an appeal involves a formalized analysis of alleged legal error. *Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 897, 422 P.3d 1101, 1103 (2018). Still, when Tower appealed this decision, his opening brief to the Court of Appeals did not mention the basis for the district court's decision at all. Tower's opening brief on appeal read much like the brief that he submitted to the district court in the first instance. Critically, Tower did not lay out the errors in the district court's analysis or even challenge the lack of clarity in the bench ruling. He pointed to no specific reason the decision was in error. Tower continued to make the same argument to the Court of Appeals that he made to the district court—that his arrest for trespassing was unlawful. The district court's ruling on a ground not argued by the State should have been the basis for Tower's appellate briefing—but that ground was not raised until after the Court of Appeals rendered its decision.

We will not consider an issue not "supported by argument and authority in the opening brief." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)).

> Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue.

*Id*. (citation omitted). Thus, "a party waives an issue cited on appeal if either authority or argument is lacking . . . ." *State v. Wood,* 132 Idaho 88, 94, 967 P.2d 702, 708 (1998) (quoting *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996)).

Then, in his petition for rehearing, Tower takes aim at the decision rendered by the Court of Appeals. In its unpublished opinion, the Court of Appeals held that Tower's appeal failed because he did not challenge the district court's ruling that Officer Dustin had reasonable suspicion to detain Tower and probable cause to arrest him for resisting an obstructing an officer. We agree with the conclusion reached by the Court of Appeals.

The Court of Appeal's decision reflects how Tower argued his appeal. It was not until he petitioned for rehearing that Tower argued the district court erred by (1) ruling on a legal basis not raised by the state (reasonable suspicion for a detention rather than probable cause to arrest for

trespass), and (2) failing to address the reasonableness of the duration and scope of the detention and the objective basis for suspecting Tower committed a crime. Most importantly, it was not until his petition for rehearing that Tower made the argument that a person cannot be simultaneously under arrest and detained pursuant to reasonable suspicion. Tower's arguments are simply too late.

At oral argument here, Tower claimed the district court's ruling was unclear and failed to acknowledge that Tower was arrested within 30 seconds from his encounter with officers. This may be true, but these generalized attacks on the district court's conclusions were not raised in Tower's opening brief. If the district court's decision was unclear, Tower had an obligation to assert that assignment of error with particularity in his opening brief. He did not do so. In addition, Tower also had the ability to file a motion for reconsideration or clarification before the district court to raise these issues there and receive a definitive ruling. We have held that a party's failure to object to action by the trial court precludes a party from challenging that action on appeal. *See Mackowiak v. Harris*, 146 Idaho 864, 866, 204 P.3d 504, 506 (2009). And without a challenge to the district court's order, we will uphold the decision on the unchallenged basis. *See Montgomery v. Montgomery*, 147 Idaho 1, 10, 205 P.3d 650, 659 (2009).

Certainly, the district court ruling without hearing argument from counsel, and ruling on a ground that the State never raised, are issues that warrant the consideration of an appellate court. But those issues were never presented for appellate review before the petition for review was filed. We therefore decline to reach the issue at this stage of the proceedings.

That said, we use this opportunity to note that the Court of Appeals incorrectly suggested the district court did not refer to "reasonable suspicion" when pronouncing its ruling. This statement conflicts with the oral ruling of the district court, as set forth above, and the district court's explicit acknowledgment that the officer's had reasonable articulable suspicion to detain Tower. The district court found there was reasonable suspicion to detain Tower prior to placing him under arrest for resisting and obstructing; the court did not hold that Tower was arrested for trespassing. We affirm that decision.

## V. CONCLUSION

For these reasons, the district court's decision denying Tower's motion to suppress is affirmed.

Justices BRODY, MOELLER and ZAHN CONCUR.

STEGNER, J., dissenting.

I respectfully dissent from the majority's conclusion that Tower failed to preserve his argument on appeal. I fully agree with the majority that "the district court's ruling is not a model of clarity." However, unlike the majority, I would decline to hold defense counsel responsible for struggling to understand the district court's meandering explanation, particularly when a citizen's constitutional rights are at stake. To do so in this case results in a miscarriage of justice. I would not only reach the merits of Tower's argument, but I would also conclude that the district court erred in denying Tower's motion to suppress because he was unlawfully arrested.

I first note that, "[w]hen reviewing a case on petition for review from the Court of Appeals[,] this Court gives due consideration to the decision reached by the Court of Appeals, but *directly reviews the decision of the trial court*." *State v. Smith*, 168 Idaho 463, 483 P.3d 1006, 1014 (2021) (italics added). Because we must directly review the decision of the trial court, and because there is debate surrounding what the district court truly "decided," I find it necessary to quote the entirety of the district court's oral pronouncement, in part because the decision never resulted in a written analysis:

> Well, under the circumstances of this case, I don't think there is a basis for the motion to suppress because based upon the information the police had, they have multiple contacts with the residents, with the defendant in the days leading up to the 13th. And the initial information they have is certainly information of concern.
>
> Now, it may not be – it doesn't sound like it precisely matches what we heard today, that today's concern was that his mother was concerned that he behaved suicidally at the house.
>
> The officer testified that he presented a risk to the parents at the house in the living room, but in any event, there was an instruction given that he not be allowed to be on the property earlier in the week.
>
> And then the police respond to the multiple calls, some of which are from the neighbors saying the defendant is camping out in front of a vacant house. They go and talk to him, and he agrees to move, and then later they come back.
>
> So[,] they've got repeated calls coming back with the defendant camping in the vicinity of an area where there's, based on what they know at that time, very legitimate concern about whether he should be on the property and about unusual behavior.
>
> And then they get a call from the defendant himself saying that he has been the victim of an aggravated assault where a gun has been pointed at his head. And then they arrive on the property – looking at the dispatch notes, they are confusing because "she is not aware." It's not unreasonable to interpret that "she is not aware"

means that grandma doesn't know that he's allowed on the property. She's not aware is, frankly, a little puzzling.

But what they know is that – what they are coming to respond to is a call where the defendant has said he's been – had a gun pointed at him. Now – then, he is coming out of the garage. He is told to stop, and then he's fiddling with his coat.

I think this is a situation where there is not a basis in part because it's not based on the – it's not – this is a totality of the circumstances issue. Anything in the totality of the circumstances, at a minimum, they would be permitted to detain him because there was an understanding and the authority on the 11th and 12th that he may have presented a risk to occupants. And they had seen with their own eyes concern by the grandmother about the situation.

And then he's coming out after allegedly being assaulted by his smaller and older grandmother. He is strolling out of the house. I think there is every reason for the authorities to be concerned that he might have a weapon and that something may have happened that they needed to control the situation on.

And then and once he begins struggling and not responding to their instructions, it seems to me this is a situation where there's a justifiable search.

And so[,] I'm going to deny the motion to suppress based on the totality of these circumstances, which it sounds like they may not have gotten information about the second bit of information. But just based on his own call that he had been assaulted by a person – they had already met – with a weapon, and then he is strolling out of the house and there had been concerns earlier, I think that is a justifiable basis to – for them to take action and to control the scene and to investigate more fully, which is certainly sounding like what their intent was to just to check into it, to get him in control.

Because you have a situation where you have reports of a person who might be using a weapon to harm others. Then you have a report of somebody else pointing a weapon at him. They know the person who is pointing the weapon at him is smaller and more elderly than he is because he is a young fit person or he wouldn't be a wildland firefighter.

So[,] I think they had every reason to kind of put a hold on this situation while they checked it out. And so – then, of course, he struggle [sic] and doesn't respond to commands or instructions, which would raise their concern about maybe something bad had happened in the house. Because that would raise anyone's concern that maybe something bad had just gone down in the house.

And so, then, when they arrest him because is he now resisting because they would have – they had a right to detain him and investigate more fully based just on what they already knew. Then he starts resisting and behaving strangely, then – then it justifiably moves up to the next level, which is where they can basically hang onto him.

And at that point, he then resists and obstructs the officers, so then they do have grounds to do a search incident to arrest. And then we have the drugs being

discovered. So there is no basis for a suppression in this case. It just isn't there based on the facts as they unfold in this case.

But this is certainly a case that brings into play those legal doctrines that say look at the totality of the circumstances, look at what everybody knew and would have been thinking. Because, certainly, this is a situation that more than justified them trying to freeze the situation, at a minimum, and see what is happening. And then things move badly from there, which then justifies the next steps.

But this is the kind of situation where for sure as many contacts that all law enforcement had had with his residence, the days leading up, is definitely a situation where if there's a call of somebody assaulting somebody else – as I said, somebody they had met and know is smaller and more elderly, it warrants the action that was taken in this case. So[,] this is not an illegal search.

So why don't you think about it, and I'll take up – I have another case to take up, but frankly, I'd say apart from the suppression issue, this is a situation that warrants more examination by us too.

So, we'll see where we are.

Following this soliloquy, Tower's defense counsel attempted to ask "a clarifying question": "Regarding the [c]ourt's ruling, we would then ask the [c]ourt to consider this under the Fourth Amendment to the United States Constitution, as well as the Idaho State Constitution, Section 1 – " The district court cut him off, stating, "Right. That's what I just did."

Tower's defense counsel persisted and requested, "[a]nd can I just – I just want – can I ask the [c]ourt – clarify with the [c]ourt's making the ruling based on both provisions." The district court then stated:

I am making the ruling that this was a proper search incident to arrest. And this is a proper situation for the authorities to have detained him, to investigate it more fully.

At a minimum, this is a proper situation to detain somebody, to investigate fully about what's going on. That is exactly why you have that kind of stop, is that there are times when the situation needs to be frozen.

And they, in my view, would have had reasonable articulable suspicion that something was going on that warranted further investigation. And then when the situation escalates from there to more aggressive resistance in their instructions, then what you do is you move from a situation where looking into it is what you are probably talking about to a situation where – but when you are looking into it, you are pretty concerned because you have all of these reports from the days before. You have a report from the defendant himself that somebody held a gun to his head, but they know who that is. And they can assess that, anyone in their right mind would have investigated this situation more fully.

And it was reasonable – the steps they took were reasonable law enforcement actions to deal with a situation which moved from checking things out to the more serious situation of having grounds to arrest and grounds to conduct a search incident to arrest.

So, that's my ruling.

The majority quotes only portions of the district court's stream-of-consciousness ruling, pointing to small snippets that support the Court of Appeals' interpretation of the "substance of the district court's ruling." *See State v. Tower*, No. 46807, 2020 WL 6058598, at \*2 (Ct. App. Oct. 14, 2020) (unpublished opinion). But context is important, and part of that context is what was argued by the parties below. In his written memorandum supporting his motion to suppress, Tower specifically argued that, because the officers lacked probable cause to arrest him for trespassing, the search was unlawful under both the Fourth Amendment of the U.S. constitution and Article I, section 17 of the Idaho constitution. In its written objection, the State countered that "[a]n objective review of the information available to the officer's [sic] supports a finding of probable cause to make an arrest for trespass" and that "law enforcement found meth in his pocket during a search incident to arrest." Then, after the close of evidence at the suppression hearing, the district court made its ruling without allowing argument from either party.

When the district court's ruling is properly considered against this backdrop, it appears that the district court adopted the State's written argument: that the officers had probable cause to arrest Tower for trespassing. The district court noted that the officers, "based on what they kn[ew] at that time," had a "very legitimate concern about whether he should be on the property" and "that he may have presented a risk to occupants." The district court based its ruling on "the totality of the circumstances" and "what everybody knew and would have been thinking." This is in line with a determination of there is probable cause to make an arrest:

> In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. The facts making up a probable cause determination are viewed from an objective standpoint. In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account. The state has the burden of showing, *based on the totality of the circumstances*, the validity of any warrantless arrest.

*State v. Gibson*, 141 Idaho 277, 282–83, 108 P.3d 424, 430 (Ct. App. 2005) (internal citations omitted, italics added).

I recognize that the ruling is not clear and that it, as the majority points out, "references the officers' right to detain and investigate." However, I disagree with the majority's statement that "there was no effort before the district court to clarify the ruling for appeal." Tower's defense counsel specifically requested the district court clarify that it was making its ruling under "both provisions": the Fourth Amendment and Article I, section 17 of the Idaho constitution, both of which were specifically argued in the written memoranda before the district court. The district court states, "Right. That's what I just did." To me, this indicates the district court was affirming to Tower's defense counsel that it was deciding the issue upon the arguments raised by the parties. The district court then unequivocally states "I am making the *ruling* that this was a proper search incident to arrest." (Italics added.) Though the majority characterizes this statement as a "mention" of a proper search incident to arrest, the district court itself characterized it specifically as a "ruling."

While I do not doubt there are multiple reasonable readings of the district court's ruling, I cannot say that Tower's understanding of it, as laid out in his opening brief before the Court of Appeals, is categorically wrong: "The district court ultimately denied Mr. Tower's motion to suppress finding that, based on the totality of the circumstances, the officers were justified in controlling the situation by arresting Mr. Tower and the search was lawful because it was done incident to arrest." As such, I conclude that Tower adequately preserved his arguments for appeal.

Rigid adherence to our preservation doctrine in this case—particularly given the lack of clarity in the district court's ruling—results in an unjust outcome that essentially rewards police officers for their failure to comply with our constitutions. It is this result that compels me to reach the merits of Tower's appeal: I conclude the district court erred in denying Tower's motion to suppress.

"The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution prohibit unreasonable searches and seizures." *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2021). "Warrantless searches are *presumptively unreasonable* unless the search falls within one of the 'specifically established and well-delineated exceptions.'" *State v. Blythe*, 166 Idaho 713, 716, 462 P.3d 1177, 1180 (2020) (quoting *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988)) (italics added). "One such exception to the warrant requirement is

for searches conducted incident to an arrest." *Id.* "Under the search incident to arrest exception, law enforcement officers 'may search an arrestee incident to a *lawful* custodial arrest.'" *Id.* (quoting *State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017)) (italics added).

> The threshold question involves probable cause. An officer may perform a warrantless search only incident to an arrest that is lawful. "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable [and lawful] under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."

*Lee*, 162 Idaho at 649, 402 P.3d at 1102 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)) (alteration in original).

Importantly, probable cause is an objective standard. For probable cause to exist, "an officer must have information that would lead a person of ordinary care to believe or entertain an honest and strong presumption that such person is guilty." *State v. Jenkins*, 143 Idaho 918, 922, 155 P.3d 1157, 1161 (2007). "In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the search warranted a person of reasonable caution to believe that the action taken was appropriate." *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000) (citing *Julian*, 129 Idaho at 137, 922 P.2d at 1063). "The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability." *Id.* "The facts making up a probable cause determination are viewed from an objective standpoint." *Id.*

There simply was no probable cause to arrest Tower for trespassing. It is undisputed that Tower was no longer trespassed from the property at the time of his warrantless arrest. It is also undisputed that the Boise Police Department was aware that he was no longer trespassed. Dustin himself was informed, via the 911 dispatch log, that Tower was allowed on the property. And yet, within seconds of arriving on the scene, Dustin immediately arrested Tower—without a warrant— for trespassing. The officer rejected what he had been told regarding Tower's lawful ability to be on the property. That is the antithesis of what the law requires.

The Fourth Amendment of the U.S. constitution and Article I, section 17 of the Idaho constitution allow officers leeway for reasonable mistakes. However, no allowances are made for officers who choose to keep themselves in the dark regarding facts (or who reject those facts when informed of them) that would undermine their subjective belief that criminal activity is afoot. That Dustin thought it was "confusing" for the dispatch log to state that Tower was once again allowed

on the property is not a reasonable mistake as is contemplated by our state and federal constitutions. Dustin should have—and easily could have—exercised his due diligence and simply followed up with dispatch. He chose not to do so. Instead, he simply arrested Tower, without probable cause. This was not an instance of a reasonable man, "acting on facts leading sensibly to [his] conclusion of probability." *See Kerley*, 134 Idaho at 874, 11 P.3d at 493. It is the exact opposite.

I further note that, although Tower made his 911 call at approximately 7 p.m., Tower's mother notified the Boise Police Department around 9:30 a.m. that Tower was no longer trespassed from the property. More than nine hours had elapsed, which was more than enough time for the Boise Police Department to disseminate that information to its officers on duty. Furthermore, Dustin was not on duty at the time Tower's mother called; instead, his shift started around 3:30 p.m., when he attended his pre-shift briefing at the police station. This is not a case where Dustin was unreachable and reasonably believed he had up-to-date information. There were multiple opportunities for him to take steps to apprise himself of the fact that Tower was allowed on the property, or for other officers to do so. Whether this failure is due to neglect or an intentional decision to skirt constitutional requirements, it should not be allowed to stand.

In sum, Dustin lacked probable cause to arrest Tower for trespassing. Due to the lack of probable cause, Tower's arrest was unlawful, and the search incident to the unlawful arrest was unreasonable as is prohibited by the Fourth Amendment and Article I, section 17 of the Idaho constitution. As such, I conclude that the district court erred in denying Tower's motion to suppress. *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009) ("While evidence obtained during a search incident to a lawful arrest is generally admissible, evidence obtained during a search subsequent to an unlawful arrest is not."). Accordingly, I respectfully dissent.