# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51238

SAMUEL and PEGGY EDWARDS, )
)
   Complainants-Appellants, )       Boise, February 2025 Term
)
v. )       Opinion filed: April 24, 2025
)
IDAHO PUBLIC UTILITIES )       Melanie Gagnepain, Clerk
COMMISSION and PACIFICORP, dba )
ROCKY MOUNTAIN POWER COMPANY, )
)
   Respondents. )

Appeal from the Idaho Public Utilities Commission.

The Commission's orders dismissing the Edwards' complaint and denying reconsideration are <u>affirmed</u>.

Samuel and Peggy Edwards, Rexburg, Appellants pro se. Samuel Edwards argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent Idaho Public Utilities Commission. Adam Triplett argued.

Rocky Mountain Power Company, Portland, Oregon, for Respondent PacifiCorp dba Rocky Mountain Power Company. Joseph M. Dallas argued.

_____

MOELLER, Justice.

This is an appeal from the Idaho Public Utilities Commission ("the PUC"). Citing health concerns, Samuel and Peggy Edwards ("the Edwards") refused to allow PacifiCorp, dba Rocky Mountain Power Company ("Rocky Mountain"), to install a "smart" electrical meter[1] on their property. Rocky Mountain considered the Edwards' refusal to be a violation of its terms of service, which authorized Rocky Mountain to access electrical meter bases on customer properties for a

---

[1] Smart meters, also known as Advanced Metering Infrastructure ("AMI") meters, "wirelessly record[] and transmit[] consumers' energy consumption data" to the electric utility provider. Zachariah Sibley, *Centralizing Energy Consumption Data in a State Data Hub*, 20 Minn. J.L. Sci. & Tech. 315, 318–19 (2019). This removes the need for manual collection of data, allows for the communication of "significantly more detailed information" for the benefit of both the consumer and the provider, and produces insightful and "meaningful data" on "one's energy usage." *Id.*

variety of reasons. After negotiations with the Edwards failed, Rocky Mountain informed the Edwards that electrical service to their home would be terminated unless Rocky Mountain was allowed to replace its existing meter with a smart meter.

Before service could be terminated, the Edwards filed a formal complaint with the PUC, maintaining that they had not denied Rocky Mountain access to the meter base on their property and asserting that they should be allowed to "opt-out" and choose a reasonable alternative to the smart meter. In response, Rocky Mountain filed a motion to dismiss the Edwards' complaint, which the PUC granted. The Edwards then filed a motion for reconsideration, which the PUC also dismissed. The Edwards then appealed to this Court. For the reason stated below, we affirm.

## I.     FACTUAL BACKGROUND

The Edwards reside in Rexburg, Idaho. Rocky Mountain is a public utility in the state of Idaho, and it provides electrical service to the Edwards' home. Rocky Mountain places electrical meters on its customers' properties so that it can measure the amount of electricity consumed and bill accordingly. Rocky Mountain retains ownership of these meters.

In December of 2021, the Edwards received a letter from Rocky Mountain notifying them that beginning in January of 2022, it would be replacing its existing analog electrical meters in their neighborhood with new, digital, "smart meters." The Edwards responded, advising that they did not consent to the installation of a smart meter due to concerns about its alleged negative health effects, which they argue would be exacerbated by the meter's proximity to their home. The Edwards were specifically concerned about the allegedly "deleterious" effects the smart meter might have on their special needs daughter, who has "a complex medical history." Rocky Mountain informed the Edwards that they could not opt out of the meter upgrade.

The Edwards maintained communications with Rocky Mountain throughout the spring of 2022, with both parties working to find a solution to the impasse. Rocky Mountain offered to relocate the meter to a different location on the property at the Edwards' expense (roughly $5,000), but the Edwards maintained that it was too expensive for them to do so. Eventually, in the summer of 2022, a subcontractor for Rocky Mountain came to the Edwards' home to replace their electrical meter with a smart meter. The Edwards again declined the replacement, citing health concerns. The Edwards informed Rocky Mountain that they would not consent to any smart meter being installed on their property.

2

In November of 2022, Rocky Mountain sent the Edwards another letter, stating that its "installer couldn't access the meter base" located at the Edwards' home. The letter instructed the Edwards to contact Rocky Mountain to "resolve any access issues and set an appointment" for a meter replacement. Subsequently, the Edwards sent a letter to Rocky Mountain disputing that any installer had been "denied access" to the meter base at their home. On March 3, 2023, Rocky Mountain sent another letter, again notifying the Edwards that its installer had been denied access to the meter base. On March 17, 2023, Rocky Mountain sent a final notice to the Edwards stating that, unless they allowed Rocky Mountain to install the smart meter, service to their home would be terminated.

The Edwards responded by filing a formal complaint against Rocky Mountain with the PUC, seeking to prevent Rocky Mountain from terminating service to their home.[2] The complaint alleged eight violations of law: (1) breach of peace by attempting to install AMI meters on their residence; (2) attempted extortion of the appellants' will; (3) impairment of contractual obligations; (4) attempted extortion by trying to take over the appellants' private property for commercial use; (5) attempted illegal wiretapping; (6) threat with intent to commit harm of the appellants; (7) gross and hazardous negligence; and (8) actionable fraud.

The PUC consolidated the Edwards' claim with similar complaints from four other customers in Rocky Mountain's service area, each of which concerned Rocky Mountain's "notification to terminate electric service if customers refused to allow installation of [smart] meters at their residences." Rocky Mountain filed a combined answer to the four complaints and a motion to dismiss, alleging that each complaint failed to state a claim upon which relief could be granted. The Edwards filed a response opposing the motion to dismiss. After considering the parties' respective arguments, the PUC issued Order No. 35849, which dismissed the Edwards' complaint. In that Order, the PUC concluded that the complainants had not "provided evidence to support a finding that [smart] meters present a legitimate safety concern, or that public utilities in Idaho should be required to provide an opt-out option for [smart] meters." The PUC also determined that Rocky Mountain had authority to access electrical meters on its customers' properties so that it could replace them with smart meters.

---

[2] As of the date of oral argument, Rocky Mountain has not yet terminated services to the Edwards' home due to the ongoing nature of the case.

The Edwards petitioned the PUC for reconsideration of the order dismissing their formal complaint. In their petition, they alleged that the PUC "overlook[ed] the material substance" of their initial complaint and asserted several new arguments. The PUC subsequently issued Order No. 35904, denying the Edwards' petition for reconsideration and concluding that the Edwards had failed to demonstrate that its previous decision was unreasonable, unlawful, erroneous, or not in conformity with the law. The Edwards timely appealed to this Court.

## II.    STANDARD OF REVIEW

The Idaho Constitution grants this Court appellate jurisdiction over orders of the PUC, subject to the legislature's authority to establish the conditions, scope, and procedure for such appeals. Idaho Const. art. V, § 9. Exercising this power, the legislature has provided that this Court's appellate review of the PUC "shall not be extended further than to determine whether the [PUC] has regularly pursued its authority . . . ." I.C. § 61-629. Thus, this Court reviews whether the PUC "abused or exceeded its authority or made findings unsupported by substantial evidence. . . ." *Intermountain Gas Co. v. Idaho Pub. Utilities Comm'n*, 97 Idaho 113, 127, 540 P.2d 775, 789 (1975). "Where the [PUC]'s findings are supported by substantial, competent evidence, this Court must affirm those findings and the [PUC]'s decision." *Indus. Customers of Idaho Power v. Idaho Pub. Utils Comm'n*, 134 Idaho 285, 288, 1 P.3d 786, 789 (2000) (citation omitted).

## III.    ANALYSIS

We have been asked to determine whether the PUC properly determined that Rocky Mountain has the authority to access the Edwards' property to replace its existing analog meter with a smart meter. Thus, we must first consider the governing laws, rules, and regulations that set forth the parties' rights in this matter. Public utilities in Idaho are required by statute to file "schedules showing all rates, tolls, rentals, charges and classifications collected or enforced," and all rules and regulations "which in any manner affect or relate to rates . . . or service," including grounds for termination of service. I.C. § 61-305. Once these documents, known as "tariffs," are filed with and approved by the PUC, they bind both the public utility and the customer with the force of law. *See Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939). The tariff forms the contractual agreement between the customer and the utility. The Idaho Utility Customer Relations Rules ("UCRR") also govern public utilities and "provide[] a set of fair, just, reasonable, and non-discriminatory rules" for, among other things, denial and termination of a

4

customer's utility service. IDAPA 31.21.01.001. Importantly, if a provision of a tariff and a provision of the UCRR conflict, the UCRR supersedes the tariff. IDAPA 31.21.01.010.

On appeal, the Edwards argue that Rocky Mountain is only authorized to enter their property for the specific purposes listed in Rocky Mountain's tariff, and that "replacing" a meter is not a purpose listed in the tariff. Thus, the Edwards assert that they did not "deny" Rocky Mountain access in a manner that entitled Rocky Mountain to terminate service to their home. The Edwards maintain that the PUC misinterpreted Rocky Mountain's tariff, and did not properly address whether Rocky Mountain's actions were consistent with the UCRR.

We note that while this is how the arguments were presented to us on appeal, the extent to which they were made before the PUC is murky. As explained above, the Edwards' complaint originally stated eight claims against Rocky Mountain, all of which sounded in either criminal or tort law. In its order dismissing the Edwards' complaint, the PUC correctly concluded that it was "not the appropriate body" to adjudicate such claims, as it has only limited jurisdiction under the Idaho Code. Notably, the Edwards' complaint did not allege a violation of either Rocky Mountain's tariff or the UCRR; instead, it was limited to criminal and tort claims. However, the Edwards' complaint made an incidental allegation that Rocky Mountain did not have "access" to their property and was breaking their "existing contractual agreement" through its actions. It seems that this allegation, in the PUC's view, raised the specter that Rocky Mountain violated its tariff. Thus, notwithstanding the Edwards' failure to explicitly raise a cognizable claim under the terms of the tariff or the UCRR, the PUC addressed whether Rocky Mountain's tariff provided it with the authority to access a customer's property for the purpose of replacing an existing meter with a smart meter. It concluded that Rocky Mountain was authorized to do so. Accordingly, it determined that the Edwards' refusal to allow installation of the new smart meter violated the tariff.

Because the Edwards did not explicitly allege a violation of the tariff, it appears that the PUC addressed the issue of "access" under Rocky Mountain's tariff out of an abundance of caution. Nevertheless, to the extent that the PUC decided the issue the Edwards raised regarding their contractual agreement with the Rocky Moutain, we will also address it.

A. **The PUC correctly interpreted the tariff as providing Rocky Mountain with authority to access the Edwards' property to replace its existing analog meter with a smart meter.**

The Edwards contend that the PUC erred when it interpreted Rocky Mountain's tariff as allowing Rocky Mountain to enter a customer's property to replace an existing analog meter with

5

a smart meter. They assert that "replacing" a meter is not listed in the tariff as one of the reasons that a customer must grant Rocky Mountain access to its property. Thus, they maintain that they never "denied access" to Rocky Mountain in a way that would enable Rocky Mountain to properly terminate services.

Electric Service Regulation ("ESR") No. 6 of Rocky Mountain's tariff provides: "The customer shall provide safe, unencumbered access to [Rocky Mountain]'s representatives at reasonable times, for the purpose of reading meters, inspecting, *repairing or removing metering devices* and wiring of [Rocky Mountain]." (Emphasis added). ESR No. 7 of the tariff states: "[Rocky Mountain] will *furnish and maintain* all meters and other metering equipment." ESR No. 7(1). (Emphasis added). The PUC concluded that, read together, the provisions provide Rocky Mountain with the authority to replace existing meters with smart meters:

> ESR No. 6(2)(d) requires [the Edwards] to provide access to [Rocky Mountain] representatives "for the purposes of . . . [among other things] repairing or removing metering devices . . . ." Under this ESR, [Rocky Mountain] may remove the existing meter to replace it with an AMI meter. If [the Edwards] refuse to allow [Rocky Mountain] to remove [Rocky Mountain]-owned meters, they are violating the ESR. Further, ESR No. 7(1) requires [Rocky Mountain] to "furnish and maintain all meters and metering equipment." When read together, ESR Nos. 6 and 7 require that [Rocky Mountain] provide its customers with the meter and associated metering equipment and requires the customer to provide [Rocky Mountain] with access to the meter to accomplish this. Based on the foregoing, [Rocky Mountain] has the necessary authority to install an AMI meter on the [Edwards'] property in its furnishing of electric service as a public utility.

(Second brackets and ellipses in original). The PUC went on to conclude that the Edwards' refusal to allow Rocky Mountain access to replace their existing meter with a smart meter was "a violation of the ESR agreed to as a condition of receiving [Rocky Mountain]'s service." On appeal, the Edwards maintain that the PUC misinterpreted the tariff and argue that it does not give Rocky Mountain authority to access their property to replace the existing meter with a new one.[3]

Here, the ESRs unambiguously provide Rocky Mountain with authority to access existing meters to replace them with new ones. The ESRs require customers to grant Rocky Mountain "safe, unencumbered access" to "repair" and "remove" meters, while also imposing a duty on Rocky

---

[3] The Edwards also take issue with the PUC's statement that ESR No. 6(2)(d) requires them to provide access to Rocky Mountain "for the purposes of . . . [among other things] repairing or removing metering devices . . . ." (Alteration in original). The Edwards complain that the PUC's inclusion of "[among other things]" signals the addition of numerous, unnamed reasons for which Rocky Mountain can access their property. However, this is clearly mistaken; the PUC was simply indicating that the *ESR itself* listed other such reasons and it was omitting those reasons in its quote because they were not relevant to the issue at hand.

Mountain to *furnish* meters. Moreover, there is no limitation on the reasons Rocky Mountain may remove a meter.[4] Because Rocky Mountain has a duty to furnish meters, which is coupled with the authority to remove and repair those meters, the plain language of the ESRs supports the view that Rocky Mountain can also replace a meter. It defies common sense to parse the words "removal" and "furnish" as suggesting that they somehow, when read together, exclude the ability to "replace" a meter. Indeed, when combined, removing and then furnishing a meter necessarily means that the original meter is being replaced. The Edwards' interpretation goes so far as to suggest that Rocky Mountain has no authority to replace a meter when it is "repairing" a meter. This interpretation defies a natural reading of the ESRs and conflicts with its intent to enable Rocky Mountain to effectively provide services. Therefore, we conclude that the PUC did not exceed its authority in determining that the plain language of the tariff provides Rocky Mountain with authority to access the Edwards' meter base for the purposes of replacing it with a smart meter.

**B. The PUC did not err by failing to interpret and apply Uniform Customer Relations Rule 302.**

The Edwards next contend that the PUC was required to address whether their refusal to allow Rocky Mountain to replace its meter provided the grounds for termination set forth in UCRR 302. UCRR 302 outlines the grounds upon which a utility may involuntarily terminate a customer's service. Apropos to this case, UCRR 302 permits termination when "[t]he customer or applicant denied or willfully prevented the utility's access to the meter." IDAPA 31.21.01.302.01.e. The Edwards assert that the PUC was required to address and interpret UCRR 302 and determine whether Rocky Mountain properly terminated service to their home. Because the PUC never addressed whether refusing the installation of a smart meter was the equivalent of denying Rocky Mountain access under UCRR 302, the Edwards maintain that the PUC's order is erroneous and that the case should be remanded to address this error.

The Edwards' argument is unavailing. The PUC did not need to answer the question of whether Rocky Mountain could properly terminate services under UCRR 302 because the Edwards never raised the issue in their formal complaint. PUC's Rules of Procedure are set forth in IDAPA 31.01.01.54, which addresses how a person may file a formal complaint against a utility, notifying

---

[4] At oral argument, the Edwards asserted that ESR No. 10, which was not in the record, limited the reasons Rocky Mountain could permissibly remove a meter. After taking judicial notice of the tariff in whole following the parties' agreement at oral argument, and reviewing the ESRs, we can locate no language limiting the reasons for which Rocky Mountain may remove a meter.

it of the allegations against it. The complaint is required to (1) "[f]ully state the facts constituting the acts or omissions of the utility," (2) reference the "specific provision of statute, rule, order, notice, tariff or other controlling law that the utility has violated," and then (3) state the relief requested." IDAPA 31.01.01.54.02–.04. Referring to the relevant legal provision violated is particularly important because, unlike the general jurisdiction of a district court, the PUC's "jurisdiction is limited and has to be found entirely in the enabling statutes." *Afton Energy, Inc. v. Idaho Power Co.*, 111 Idaho 925, 928, 729 P.2d 400, 403 (1986). Additionally, the Respondents point out that the PUC's procedural rules do not contain a provision allowing unpleaded issues to be tried by consent; therefore, issues not raised in an initial or amended pleading are not properly before the PUC for determination.

Here, the Edwards' formal complaint neither alleged a violation of UCRR 302 nor referred to it. The first reference to UCRR 302 is found in the Edwards' written objection to Rocky Mountain's motion to dismiss the formal complaint. There, for the first time, they averred that Rocky Mountain was not denied access to their meter for a reason specified in UCRR 302, and that declining a meter upgrade is not equivalent to denying access to the meter. The Edwards briefly mentioned UCRR 302 once more in their petition for reconsideration in the form of a rhetorical question. However, the Edwards did not raise this claim to the PUC in their formal complaint or seek to amend their complaint to add it. Therefore, they cannot raise it for the first time in a petition for reconsideration.

The PUC, acting pursuant to its duty to adjudicate the specific claims brought by the Edwards against Rocky Mountain, had no authority to decide issues beyond the scope of the Complaint. *See Afton Energy, Inc.*, 111 Idaho at 928, 729 P.2d at 403; IDAPA 31.01.01.054. Because the Edwards did not reference the alleged failure to comply with UCRR 302 as a basis for relief in their complaint, the PUC did not need to address that rule to properly dismiss the case.

As we noted above, the Edwards only marginally raised the issue of "access" under Rocky Mountain's tariff. The Edwards' formal complaint alleged that Rocky Mountain was not denied access to their property and that Rocky Mountain was breaking their "existing contractual agreement" through its actions. In an effort to construe the pleadings liberally, it appears the PUC addressed the Edwards' claim under the terms of Rocky Mountain's tariff. However, nothing in the Edwards' formal complaint even marginally raised the issue of the tariff complying with the UCRR, which is the argument the Edwards now make on appeal. Likewise, although the UCRR

8

was briefly referenced in the Edwards' motion for reconsideration, it was not the basis of their request for relief. Therefore, the PUC did not act unreasonably when it failed to address the UCRR in its decision on reconsideration.

Moreover, just because the Edwards made a claim regarding Rocky Mountain's authority to replace a meter under the terms of its tariff, it did not require the PUC to address the legally distinct issue of whether the tariff itself violated the UCRR. While a tariff contains all the binding rules and regulations for service between the utility and the customer, the UCRR provides "fair, just, reasonable, and nondiscriminatory rules" that limit the terms of the tariff. *See* IDAPA 31.21.01.001. Due to this relationship, UCRR 302 acts as a limitation on the grounds for terminating services that a utility may include in its tariff. *See generally* I.C. § 61-305. Thus, it is the tariff that provides the affirmative authority for termination, while the UCRR operates as a legislatively created limit on the terms of the tariff. For this reason, a claim alleging a violation of a tariff and a claim alleging a violation of the UCRR are separate inquiries. Just because the PUC addressed Rocky Mountain's authority to replace a meter under its tariff does not mean it was required to also weigh in on the separate issue of whether the tariff's terms exceeded the bounds of the UCRR when that issue was not raised by the Edwards.

Finally, the undisputed facts show that the Edwards denied Rocky Mountain access to their property. The Edwards essentially fault the PUC's order for not explicitly stating that denying Rocky Mountain access for the purposes of installing a smart meter constituted a denial of access under the UCRR. But it is easy to see why the PUC's order did not make such a determination—it was undisputed that Rocky Mountain was denied access to the Edwards' property to replace the existing meter. In fact, it was a foundational assumption of the Edwards' complaint. The question before the PUC was whether Rocky Mountain had authority to access the Edwards' property to replace their meter. If it had such authority, then the Edwards' denial of access violated the tariff and warranted the termination of services. The PUC had already determined that Rocky Mountain had such authority. Thus, the PUC had no reason to go beyond the issue at hand to state an obvious and uncontested fact: that the Edwards denied Rocky Mountain access to their property.

While the PUC never expressly determined whether the Edwards' conduct constituted grounds to terminate their electrical service under UCRR 302, that issue was not before it. The PUC determined that Rocky Mountain had authority under its tariff to access the property to install

a new meter and that fully resolved the issue raised by the Edwards below.[5] Because it had no reason to determine whether the Edwards' denial of access to Rocky Mountain constituted a denial of access under UCRR 302, we conclude that the PUC did not abuse or exceed its authority by not addressing and interpreting UCRR 302. Therefore, we hold that its findings and conclusions are sufficient to affirm the denial of the Edwards' petition for rehearing.

## C. The Edwards failed to establish a violation of their constitutional rights.

Finally, the Edwards make a novel constitutional claim: that the Idaho Constitution protects their right to refuse replacement of an existing electrical meter with a new meter—while still benefiting from Rocky Mountain's services—due to health and safety concerns. The Edwards rely on Article 1, section 1 of the Idaho Constitution, which states that:

> All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety.

Idaho Const. art. I, § 1.

The Edwards claim, for the first time on appeal, that Rocky Mountain violated their constitutional rights by terminating electrical service to their property "solely because [they] exercise[d] judgment, in so far as [they were] capable, to secure the safety of [themselves] and [their] family members . . . ." As evidence of the risk to their health and safety, the Edwards rely exclusively on the evidence and argument cited in an amicus brief filed in a Pennsylvania Supreme Court case, purporting to show the negative health effects of smart meters. *See Povacz v. Penn. Pub. Util. Comm'n*, 280 A.3d 975 (Pa. 2022).[6]

Citing exceptions to the general preservation rules, the Edwards argue that we may permissibly address this constitutional argument despite it being raised for the first time on appeal. However, we need not address this issue, as the Edwards' constitutional argument has been waived on other grounds. "It is well established that this Court will not consider an issue on appeal that is not 'supported by argument and authority in the opening brief.' " *Greenfield v. Meyer*, ___ Idaho

---

[5] The Edwards also make a conclusory allegation that Rocky Mountain has a conflict of interest in terminating services due to their statutory duty to provide service in a "just and reasonable" manner. However, because the Edwards provided no support for this argument, we decline to address it.

[6] In *Povacz*, the Pennsylvania Supreme Court rejected the arguments advanced in the amicus brief filed by Children's Health Defense, holding that the customers had failed to demonstrate that smart meters were unsafe or that forced exposure to smart meters amounted to unreasonable service. 280 A.3d at 1009–14. The *Povacz* court noted that the customers relied on "inconclusive research and studies regarding the effects of [the radiofrequency electromagnetic energy that smart meters emit]," and failed to prove a "conclusive causal connection between [smart meter] emissions and adverse human health effects." *Id.* at 1012, 1014.

___, ___, 560 P.3d 517, 525 (2024) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)). "Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court." *Bach* v. *Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Randall* v. *Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975)); *see also* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon.").

Here, the Edwards have failed to sufficiently support their position with cogent argument or proper authority. As noted, they rely solely on an amicus brief filed in a Pennsylvania case for evidentiary support, without supplying any foundation for the factual assertions it contains. *See Povacz*, 280 A.3d at 1012, 1014. More importantly, the Edwards do not offer any explanation for how the Idaho Constitution or the United States Constitution would allow a private cause of action against Rocky Mountain for violation of their rights. They have cited no cases interpreting or applying Article I, section 1 of the Idaho Constitution to constrain the powers of a private entity. The Edwards did cite cases dealing with due process under the United States Constitution; however, they failed to present legal authority suggesting that "a private entity, is governed by the Fifth and Fourteenth amendments." *Cole v. Idaho Pub. Utils. Comm'n*, ___ Idaho ___, ___, 565 P.3d 815, 819 (2025); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936–37 (1982) (explaining that the due process rights can only be violated by state action, as opposed to the actions of private parties).

Simply put, the Edwards have not provided this Court with a proper legal foundation to understand the basis for, and thereby adjudicate, their claim under the Idaho Constitution. We conclude that the Edwards waived their constitutional argument because they failed to support it with sufficient authority and argument.

## IV.    CONCLUSION

The PUC's orders dismissing the Edwards' complaint and denying their motion for reconsideration are affirmed.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.

11